RICHARD CLIPSON

*v.*

ISAIAH VILLARS *et al.*

*Filed at Springfield, June 16, 1894.*

1. CHANCERY—*the allegata and probata must agree.* On a bill for the specific performance of a contract for the sale of land, the *allegata* and *probata* must agree. An averment, that the deferred payments of the purchase money were to be made in three installments, due in one, two and three years, drawing six per cent interest, and secured by mortgage on the property, must be sustained by the proof in order to make out a case, and the proof must show that the terms of the contract were agreed upon.

2. SPECIFIC PERFORMANCE—*discretion in allowing.* A court of equity will not always enforce the specific performance of a contract; such an application is addressed to the sound legal discretion of the court, and the court must be governed, to a great extent, by the facts of each case as it is presented. The contract must be reasonably certain as to its subject-matter, its purposes, its parties, and the circumstances under which it was made.

APPEAL from the Circuit Court of Vermilion County; the Hon. EDWARD P. VAIL, Judge, presiding.

Mr. E. WINTER and Mr. W. R. LAWRENCE, for the appellant.

Messrs. SALMANS & DRAPER, for the appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed by the appellant, Clipson, against the appellee, Villars, for the specific performance of an alleged contract for the sale by the latter to the former of 160 acres of land in Vermilion county. The original bill was filed on January 8, 1891, and alleged that Villars, on December 4, 1890, made a written agreement with Clipson to convey the 160 acres to him, by warranty deed, for $8,200, to be paid in cash on delivery of the deed less two mortgages on the land for $1,600, which Clipson was to assume as part of the purchase money. Nesbit was made defendant as being in possession, holding under a lease to expire on March 1, 1891. An amended bill was filed on October 21, 1891, alleging, that, by the terms of the contract, the $8,200 was to be paid as follows: $4,000 on March 1, 1891, mortgages for $1,600 on the property to be assumed, and the balance, $2,550, after taking out $50 paid in cash, to be paid on demand with six per cent interest from March 1, 1891. A supplemental bill was afterwards filed, alleging that, on August 15, 1891, the land had been conveyed to the defendant, Nesbit, but that Nesbit had actual notice of the agreement to sell to complainant. On December 23, 1892, a second amended bill was filed, alleging that Villars agreed to convey for $8,200, and that complainant paid $50 in cash, was to pay $4,000 on March 1, 1891, and assume mortgages for $1,600 on the land, and pay the balance in three equal annual payments at six per cent interest, secured by mortgage on the land. The answers deny, that there was any agreement to sell the land to the complainant; that Nesbit had any notice of such an agreement, and allege, that, on December 23, 1890, the land was sold by Villars and his son, who each owned one-half of the premises, to Nesbit for $9,200, and that Nesbit had paid $5,700 in cash, and given his notes for

$3,500 payable in one, two and three years, from August 21, 1891, secured by mortgage on the land. The Circuit Court found the issues for the defendants, and dismissed the bills for want of equity at the costs of the complainant. The present appeal is prosecuted from the decree so entered by the Circuit Court.

The contract is claimed to be embodied in certain letters, which passed between Villars and Clipson in November and December, 1890, while the former was in New York and the latter in Catlin, Illinois. After a careful examination of all these letters, we do not think, that the minds of the parties ever met in agreement upon the terms of a sale or purchase of the land. It is unnecessary to consider, whether Nesbit, who bought and paid for the land and received a deed therefor, had any notice of what is claimed to have been a contract of sale from Villars to appellant, as no such contract was made. It would be a useless task to set out the correspondence in full, or to discuss its meaning, or to analyze and comment upon all the evidence in the case. The only question involved is purely one of fact. The *allegata* and *probata* must agree. By the terms of the contract, as finally set out by the complainant in his second amended bill, the deferred payments of the purchase money were to be made in three equal installments, due in one, two and three years, drawing six per cent interest, and secured by mortgage on the property. The proof does not sustain this allegation. In his letter of December 13, 1890, appellant says: ''Now, the next thing is, how long a time will you give me on the rest? I would like to give a mortgage to you for five years, the right to pay it at any time,'' etc. In subsequent letters the appellee, Villars, refused to agree to this proposition. On December 20, 1890, he wrote to Thompson, the attorney selected to act as between him and appellant, as follows: ''He (Clipson) writes * * * that he wants five years and the privilege of paying at intervals to suit his convenience. * * * He must

excuse me from this proposition." Again, in his letter of December 24, 1890, appellant says, that he would like to discharge the deferred purchase money in two payments— one half in two years from March 1, 1891, and the other half on March 1, 1894, etc. In his reply of December 26, 1890, Villars objected to these terms, and declined to proceed further in the matter.

In his letter of December 4, 1890, appellant used language which is somewhat ambiguous, but can be fairly interpreted to mean, that he proposed to pay $4,000.00 in cash, and assume the payment of the mortgages for $1,600.00. In his reply of December 9, 1890, Villars acceded to this part of appellant's proposition, because, as appears from his letter written on the same day to Thompson, he understood that appellant was to assume the mortgages, and pay $4,000.00 in cash outside of, and in addition to, the assumption of the mortgages. But on December 13, 1890, appellant wrote, saying that the $1,600.00 to be paid on the mortgages must come out of the $4,000.00 to be paid on March 1, 1891. Villars at once replied to appellant, that the terms had been misunderstood, and wrote to Thompson that he would not accept appellant's proposition to take the $1,600.00 out of the $4,000.00, and that he had interpreted his letter of December 4th, as meaning "that he would assume the $1,600.00 incumbrance now on the farm, and, in addition, pay me $4,000.00 on March 1, 1891."

For the reasons thus stated, and for other reasons appearing in the correspondence and testimony, which it is not necessary to enlarge upon, we do not think that the terms of a contract of sale were ever agreed upon between appellant and appellee, Villars. The negotiations between them were dropped and abandoned without a meeting of minds. As we have often said, courts of equity will not always enforce the specific performance of a contract. Such applications are addressed to the sound legal discre-

tion of the court, and the court must be governed, to a great extent, by the facts of each case as it is presented. (*Harrison* v. *Polar Star Lodge*, 116 Ill. 279.) The contract must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made. (*Hamilton* v. *Harvey*, 121 Ill. 469.) We are inclined to think that the action of the court below in dismissing the bills herein filed was within the limits of the exercise of a sound legal discretion.

Accordingly, the decree of the Circuit Court is affirmed.

*Decree affirmed.*