HERMAN A. DREISKE <em>et al.</em>

<em>v.</em>

THE JOSEPH N. EISENDRATH COMPANY.

<em>Opinion filed February 21, 1905.</em>

1. SPECIFIC PERFORMANCE—*when specific performance will not
be decreed.* Specific performance will not be decreed if the contract
sought to be enforced is unreasonable, uncertain or incomplete.

2. SAME—*when letters do not constitute an enforceable con-
tract.* Letters containing a conditional offer and acceptance for
certain real estate are not ground for decreeing specific perform-
ance, where it is clear from the letters that both parties contem-
plated the subsequent preparation of the contract, the signing of
which should be precedent to its completion.

APPEAL from the Superior Court of Cook county; the
Hon. M. KAVANAGH, Judge, presiding.

The appellants filed their bill in the superior court of
Cook county against appellee for the specific performance of
a contract.  The bill alleges that on the 7th day of June, 1897,
one William Dreiske died, and in his last will and testament
appellants were named as trustees, and were given full power
to sell and convey all real estate of which he died seized, at
such time or times, at such price and upon such terms as they
might see fit, a copy of said will being annexed to the bill;
that at the time of his death the said William Dreiske was
the owner in fee simple of certain real estate, specifically
described in the bill, located on the north-easterly side of
Mendel street, in the city of Chicago; that on the first day of

July, 1903, appellants proposed to appellee, a corporation, to sell said land at a price of $12,900, and at the time of said proposal delivered to appellee a certain plat or survey of the property described in the bill, with other property, together with an accurate description of said land and the dimensions of the same, a copy of such plat being attached to the bill. Negotiations were subsequently had, on behalf of appellants by Louis F. Dreiske and on behalf of appellee by Joseph N. Eisendrath. On July 17, 1903, appellee made appellants a proposition in writing for the purchase of the lands described in the bill, by a letter in the words and figures following:

*"Mr. Louis Dreiske, City:*                    *"*CHICAGO, *July 17, 1903.*

"DEAR SIR—We have not felt quite right about the transaction of a few days ago and realize the unpleasant position it placed you in personally, but we deemed it best, taking all things into consideration. We have decided, therefore, that we will stick by our original offer, which is as follows: We offer $12,900 for south half of lot one (1) and all of lot two (2), on the basis that there are a total of 169.33 ft., average feet, based on a straight line frontage on Mendel street and a straight line frontage on the river, as shown on survey, the average being based on the calculation of adding the two frontages and dividing by two, anything over or above this measurement to be added or deducted, proportionally, from price, the estate guaranteeing the figures on survey to be correct.

"*Terms.*—A contract shall be drawn up and signed by all parties interested, and we are to put up as deposit the sum of $500. If property is accepted, the balance is to be paid and the property accepted by November 15, 1903. It is understood between us that there is to be no commission nor expense to us in this transaction, except such as our own attorney fees for examination of papers.

"Respectfully,

THE JOSEPH N. EISENDRATH CO.,

JOSEPH N. EISENDRATH, *Pres.*"

It is further alleged that the survey mentioned in said letter refers to the aforesaid plat or survey attached to the bill, and that the word "estate" refers to appellants, as trustees of the estate of William Dreiske, deceased; that the property described as the south half of lot 1 and all of lot 2 refers to the lands described in the bill; that said land has a frontage of 165 feet on Mendel street and 173.66 feet on the

north-easterly line thereof, being originally the line of the river, and being referred to in said letter as the "straight line frontage on the river, as shown on the survey;" that the average, being based on the calculation of adding the two frontages and dividing by two, is 169.33 feet; that the dock line, about the year 1887, was, with the consent of the city of Chicago, established a few feet north-easterly of said river line, and the line between said dock line and said river line has since that time been used by the said William Dreiske and appellants in connection with the property described in the bill. It is then averred that appellants, on July 20, 1903, accepted the said proposition in writing, by means of a letter in the words and figures following, to-wit:

"CHICAGO, *July 20, 1903.*
*"The Joseph N. Eisendrath Company, Joseph N. Eisendrath, Pres., Elston and Armitage Avenues:*

"GENTLEMEN—Your proposition of July 17, offering $12,900 for south half of lot one, all of lot two, block eight, in Quentius' subdivision block 22, is hereby accepted. Contract can be drawn up and signed when convenient for all parties to meet.

"Respectfully,
ESTATE OF WM. DREISKE, Deceased,
LOUIS F. DREISKE, *Trustee."*

It is further averred that the signature "Estate of William Dreiske, deceased," was affixed to said letter by Louis F. Dreiske at the request and direction of the other appellants, and by said signature it was intended by appellants to designate all of appellants, who were known and spoken of both by appellants and appellee as the estate of William Dreiske, deceased; that after the exchange of said letters repeated requests were made of appellee to prepare and sign the contract mentioned in said letter, but that appellee refused so to do, and finally, on November 1, 1903, announced its final refusal to enter into said contract; that on January 22, 1904, appellants prepared and tendered to appellee a deed for said real estate, which was refused.

The prayer of the bill is that the court decree a specific performance of the contract and the appellee be required

to take the title to the land, and also be required to pay to appellants the sum of $12,900, with interest thereon at the rate of five per cent per annum, and in default of such payment the land to be sold, under the direction of an officer of the court, to satisfy the debt, and in the event the sale shall not realize a sufficient amount to satisfy the debt, that a personal decree be entered against the appellee for the deficiency. To this bill the appellee filed a general and special demurrer, which was sustained by the court and the bill dismissed for want of equity, from which order an appeal has been prosecuted to this court.

LACKNER, BUTZ & MILLER, for appellants.

SIMEON STRAUS, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The specific performance of a contract will only be enforced where the terms are clear, certain, unambiguous, and either admitted by the pleadings or proven with a reasonable degree of certainty. Even in cases where all of these requirements are present a specific performance cannot be demanded as a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the particular case. If the contract is unreasonable or unjust, or for any other good reason should not be enforced, a decree will not be granted, and such refusal will not be a ground for reversal unless it can be said that the sound discretion of the court has been abused. *Clipson* v. *Villars,* 151 Ill. 165; *Woods* v. *Evans,* 113 id. 186; *Long* v. *Long,* 118 id. 638; *Brix* v. *Ott,* 101 id. 70; *Bauer* v. *Lumaghi Coal Co.* 209 id. 316.

The contract is alleged by appellants to be contained in the two letters set out in the bill. The question is whether these letters are sufficient to constitute a contract, or whether they were merely the commencement of negotiations which

were to result in a contract. The letter of appellee shows that some vital terms were yet to be agreed upon and all of the terms of the contract were not included in the offer. In the latter part of the letter it expressly states that a contract is to be drawn up and signed by all parties interested, and appellee is to put up as a deposit the sum of $500, and if the property is accepted the balance is to be paid and the property accepted by November 15, 1903. If this letter was intended to constitute a contract it was wholly unnecessary to draw up a subsequent contract or make a deposit of $500. From the terms of the letter we must infer that there were other negotiations to be settled by the parties before there was to be a valid, binding contract between them. This construction is sustained by the appellants' letter of acceptance. They clearly indicate therein the understanding that a subsequent contract was to be drawn. They say, "Contract can be drawn up and signed when convenient for all parties to meet." In their bill they allege that since July 20 they have sought, on various occasions, to induce appellee to enter into the contract as specified, but that it has refused so to do, clearly indicating that they did not understand that the whole contract was contained in the letters. We are of the opinion that the letters were not intended by the parties to embrace all the terms of the contract upon which the conveyance was to be made, and that the signing of a subsequent contract was a condition precedent to its completion. Appellants, in the absence of such contract, cannot, therefore, maintain a suit for specific performance.

Again, even if the letters had constituted a valid contract, the terms contained in them are not sufficiently clear and definite to entitle appellants to a decree. The offer is for the south half of lot 1 and all of lot 2, on the basis that there are a total of 169.33 average feet, based on a straight line frontage on Mendel street and a straight line frontage on the river, as shown on the survey, the average being based on the calculation of adding the two frontages and dividing by two,

and the estate is to guarantee the figures on the survey to be correct. A map is attached to the bill showing the lands sought to be conveyed. It shows a dock between the easterly end of the land and the north branch of the Chicago river. There is a dispute between the parties as to the exact amount of land covered by the offer. Appellants claim that it only extends to what they call "the line by subdivision," which does not include a frontage on the river. Appellee claims that its offer covers all land to the dock line, giving it a river frontage. A large part of the argument of counsel for both parties is devoted to their understanding of the meaning of this offer, as to which they radically differ. It is sufficient for us to say that with such substantial grounds of contention as to the meaning of the offer it cannot seriously be claimed that, even though the letters were of such a character as to constitute a contract, the terms are so clearly expressed as to sustain a decree for specific performance. Not only are the terms of the offer and acceptance indefinite, but there are also wanting from them many of the details which would necessarily be involved in the conveyance of the property, and from the absence of such terms we must conclude that it was not the intention of the parties that the letters, alone, should constitute the entire contract, but that they did intend to have a subsequent meeting and negotiations, at which all the details should be settled and a definite contract drawn and properly executed by all parties.

The question as to whether there is sufficient mutuality in the alleged contract to justify a decree for specific performance, in view of what has already been said need not be considered.

The superior court committed no error in sustaining the demurrer to the bill, and its decree will be affirmed.

*Decree affirmed.*