Laura B. VanGundy, Appellant, *vs.* William A. Steele *et al.* Appellees.

*Opinion filed December 17, 1913.*

1. Fraud—*what is necessary to justify setting aside deed for false representations.* To justify a court of equity in setting aside a deed upon the ground of false representation the fact of such misrepresentation must be established by clear proof, the representation must be about a material matter and be relied upon by the complaining party, and if the representation is as to a matter of opinion or of a fact equally open to inquiry by both parties, and in regard to which neither is presumed to trust or rely upon the other, equity is not justified in interfering.

2. Same—*mere fact that complainant has made a bad trade is not ground for setting it aside.* The mere fact that the complainant in a bill to set aside a deed has made a bad trade and has received less for her farm than its real value does not justify a court of equity in setting the transaction aside, where the inadequacy of consideration is not so gross as to be unconscionable.

3. Same—*when appointment of conservator is entitled to little consideration.* In a proceeding to set aside a deed, the fact of the appointment of a conservator for the complainant and her husband some months after the deed was made is not entitled to much

consideration, where it appears that the filing of the petitions for such appointment, the issuing of the summons and the hearing on the petitions occurred on the same day, resulting in the appointment of the petitioner as conservator for both parties, and where the conservator resigned before the commencement of the suit to set aside the deed, in which it was not alleged nor attempted to be proved that complainant was of unsound mind.

4. DURESS—*when charge of duress is not sustained.* A charge in a bill to set aside a deed that the complainant was beaten by her husband and consented to sign the deed because she was in fear of her life is not sustained, where the evidence, though conflicting, does not so preponderate against the finding of the master, as approved by the decree, that the quarrel and alleged assault were occasioned by the making of another deed for a different tract of land several days before the making of the deed sought to be set aside had been mentioned, as to justify holding the finding to be unwarranted.

5. PARTIES—*when complainant's husband should be a party to bill to set aside deed.* A bill to set aside a deed made by the complainant and her husband conveying complainant's farm in exchange for another farm, the deed to which was taken in the name of her husband, who also held the title to the personal property which went with the latter farm, should make the husband of the complainant a party to the suit.

APPEAL from the Circuit Court of Moultrie county; the Hon. WILLIAM C. JOHNS, Judge, presiding.

LEFORGEE, VAIL & MILLER, for appellant.

E. J. MILLER, W. K. WHITFIELD, and F. M. HARBAUGH, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Moultrie county dismissing for want of equity, upon a hearing of the evidence, a bill filed by appellant, Laura B. VanGundy, by her next friend, to set aside a conveyance made by her and her husband to William A. Steele of 220 acres of land situate in Moultrie county. The bill prayed that the deed be set aside as null and void, that the title to

the land and possession thereof be vested in complainant, and that Steele be required to account for the use of the land and for certain moneys received by him.

The deed sought to be set aside was executed March 28, 1911. Complainant and her husband, Dan VanGundy, then, respectively, about forty-six and fifty-one years old, had resided for many years on a farm some four or five miles from Sullivan, the county seat of Moultrie county. William A. Steele resided in the city of Sullivan, where he was engaged in the banking business. He was, and had been for years, president of the Merchants and Farmers State Bank of Sullivan, and the parties had known each other for a long time. Dan VanGundy, the complainant's husband, was a customer of that bank and had transacted business with Steele personally and with the bank. Complainant owned a farm of 220 acres in Moultrie county, and her husband owned the farm of 160 acres upon which they resided. Steele was the equitable owner of a farm of 417 acres in Marion county, Illinois, 200 acres of which was in apple orchard. The trees on about half the orchard were about eleven years old and on the other half about twenty-one or twenty-two years old. The legal title to the Marion county land was vested in James A. Steele, who held it in trust for defendant, William A. Steele. James A. Steele was made a defendant to the bill, but as no relief was asked against him, William A. Steele will be referred to hereafter as the defendant. On the 23d day of March, 1911, defendant, through his agent, Wright, proposed to complainant's husband a trade of defendant's Marion county land for the 220 acres of Moultrie county land belonging to complainant. The result of the first talk they had about it was, that the following morning complainant and her husband went to Sullivan for the purpose of going with Wright that day to Marion county to look at defendant's land. They went by rail, arriving at the farm about noon, and after driving over it and looking at it returned

the same evening to Sullivan. Complainant's land was encumbered by a mortgage for $14,000 and defendant's land was encumbered for $10,000. The original proposition made by defendant, through his agent, to the VanGundys was to give his Marion county land (subject to the encumbrance) and $10,000 cash for complainant's land, subject to the mortgage on it, which the VanGundys thought was $10,000 and which defendant claims he understood was only $10,000. This proposition was not acceptable to complainant. When the trade was finally consummated, defendant transferred to the VanGundys $2500 worth of personal property on the Marion county farm as part of the consideration, in addition to the cash paid. Dan Van-Gundy had a number of interviews with defendant, but the negotiations with the complainant were carried on by the agent, Wright. The husband was favorable to the trade from the first but the complainant refused to agree to it. Wright went out to the VanGundy farm the morning of March 28 and talked with both of them about the trade. He testified complainant said she would not agree to the trade unless defendant would give her the stock and other personal property on the farm; that he told her defendant would not do that, and he thought the trade off and went back to town. In the afternoon Dan VanGundy went to defendant's bank in company with Wright and informed defendant his wife had consented to make the trade if defendant would put in all the personal property on the Marion county farm, which defendant agreed to do. An automobile was sent out to the farm for complainant and she arrived at the bank about four or four-thirty o'clock. There the deed was prepared and executed conveying the 220 acres of complainant's land to defendant, also a deed from James A. Steele to Dan VanGundy for the Marion county land, and a deed from Dan VanGundy and complainant to complainant for the VanGundy home farm of 160 acres. Defendant gave VanGundy a certificate of de-

posit for $10,000 and caused the personal property on the Marion county farm to be turned over to the VanGundys.

The grounds relied upon by the bill and proofs were fraud, and that complainant's husband, acting under the influence of defendant, assaulted and beat her, threatened to kill her if she did not agree to the trade, and so terrorized her that she agreed to, and did, sign the deed under duress and coercion. The fraud alleged was gross inadequacy of consideration paid for complainant's land and false representations about the Marion county land.

It appears from the bill and the proofs that Dan Van-Gundy was, and had been for some time prior to March, 1911, somewhat embarrassed for ready cash. Complainant's 220 acres of land had previously been mortgaged for $10,000, but some time before March, 1911, this mortgage had been renewed and increased to $14,000. Her husband's 160 acres were also mortgaged for $10,000. Both of these farms were worth a great deal more than they were encumbered for, but Dan VanGundy was otherwise in debt, and defendant's bank held, either as owner or for collection, in March, 1911, his notes and obligations amounting to some thousands of dollars. It is alleged in the bill that Dan VanGundy is a simple, ignorant, uneducated farmer, below the average in mentality, easily imposed upon and extremely gullible; that for eight years previous to March, 1911, he had been possessed of a mania for buying and selling land, regardless of the price paid or the amount the land he acquired was encumbered for, and that in this way he had lost large sums of money and had become largely in debt. It is claimed by the complainant that defendant, knowing Dan VanGundy and knowing his mental capacity and that he was hard pressed for ready money, conceived the scheme of inducing him, by the temptation of $10,000 in ready cash, to secure the conveyance from his wife to the defendant of her 220 acres of land in exchange for defendant's Marion county farm. It is claimed by com-

plainant that there was a fiduciary relation existing between Dan VanGundy and defendant; that VanGundy had always done his banking business with defendant, had advised with him about business affairs, had secured loans from or through him, and had come to have great faith in his judgment and honesty and to rely upon anything he said or advised. Complainant insists the 220 acres she conveyed to defendant were worth over $40,000, while the Marion county farm defendant conveyed to her husband was worth but little, if any, more than $20,000, and that the consideration paid by defendant for complainant's land was so grossly inadequate as to amount to a fraud. Complainant claims she was opposed to making the trade and refused to sign a deed conveying her land to defendant in exchange for the Marion county farm, the personal property of defendant on the farm and the cash payment of $10,000, but that through the influence and false representations of defendant and his agent to her husband as to the value of the Marion county land he became wildly anxious to make the trade, and finally, upon her flat refusal to do so, he assaulted and beat her and put her in such fear of her life that she agreed to, and did, sign the deed to defendant. She claimed she did not know her husband was named as grantee in the deed for the Marion county land, and that she did not know that she and her husband signed a deed conveying to her the home farm of 160 acres, the title to which was in her husband; that she signed what she was told to sign and did not know what the instruments were, except that she was signing a deed for her 220 acres in exchange for the Marion county land, some cash and personal property.

The Marion county land was encumbered by a mortgage for $10,000, which was assumed and agreed to be paid by the VanGundys, and by the terms of the agreement defendant was to assume and pay a $10,000 mortgage on the 220 acres of complainant. The mortgage on complain-

ant's land was, in fact, $14,000, but the VanGundys were of the impression it was only $10,000. It is charged that defendant knew the mortgage was $14,000 but concealed this knowledge until after the trade was made, when he told Dan VanGundy that there had been a mistake as to the amount of the mortgage,—that he had accepted the conveyance of the 220 acres subject to a $10,000 mortgage, when, in fact, it was mortgaged for $14,000. VanGundy insisted that it was only $10,000, until he went with defendant and examined the record of the mortgage, and to adjust the matter he then gave defendant a check for $4000, which was paid out of the $10,000 deposit of the cash payment made by defendant as part of the difference of the values between the two properties. It will be seen, therefore, that the actual consideration paid for the 220 acres of land was the Marion county farm of defendant, $6000 in cash and $2500 of personal property. For this he received a conveyance of complainant's 220 acres, and although it is not so recited in the deed to him, it is admitted he took it subject to a $14,000 mortgage.

The evidence of the respective parties was highly conflicting upon all the material propositions. Upon the question of the value of complainant's land the lowest value testified to by any witness on her behalf was $200 per acre and the highest $227 per acre. The lowest value placed upon it by any of defendant's witnesses was $160 per acre and the highest $200 per acre. The lowest value placed by complainant's witnesses upon the Marion county land was $37.50 per acre and the highest $60 per acre. A majority of complainant's witnesses fix its value at $50 per acre. Three of defendant's witnesses testified the Marion county land was worth $100 per acre, two that it was worth $75 per acre, one that it was worth $85 per acre, another $80 per acre and another $77.50 per acre. The evidence was heard by a special master in chancery, who reported his conclusions of law and fact to the court. He found and

reported that there were no such misrepresentations made as to the value of the Marion county land as to justify setting the deed aside for fraud and misrepresentation, and that it should not be set aside on account of the inadequacy of consideration.

The VanGundys went down to Marion county and examined the farm before the trade was consummated. They drove all over it,—the orchard, as well as that part of the farm not in orchard. They saw the character of crops which had been raised on the farm land and talked with the tenant on the farm. They had an opportunity to make all such investigation of the soil as they desired to make. There is, we think, no basis whatever for any contention that there was any fraudulent representation as to the character of the land. Complainant's principal claim upon this branch of the case is that defendant and his agent, Wright, misrepresented the value of the orchard and the income defendant had been receiving from it. It is not claimed defendant made any representations to complainant about the orchard, but Dan VanGundy testified that defendant said to him the orchard was a fine one; that the trees on part of it were twenty-three years old and on a part of it fifteen years; that he had received but two crops off the orchard, because part of the trees were too young; that he never made any statement about what the fruit sold for. He testified Wright stated the orchard was a fine one; that one tree had produced thirty-four bushels; that the trees were valued at $15 each; that the fruit had sold for $10, $8 and $5 per tree and was never known to sell for less than $3 per tree; that defendant had received $40,000 one year from the place; that men came and bought orchards by the tree, like broom-corn men, and paid from $3 to $15 per tree for the fruit. Mrs. Chipps, a daughter of the VanGundys, testified substantially to the same statements made by Wright about the orchard that complainant testified to. Defendant testified he told Dan VanGundy about

the number of trees in the orchard and the care he had taken of them, before the VanGundys went to see the farm; that he told him he had never had but two crops from the orchard, and that from one of them he received about $2500. He testified the trees on part of the orchard were about eleven years old when the trade was made, and on the remainder (about sixty acres) they were twenty-one or twenty-two years old. He testified that in his talk with VanGundy the value of the two farms was not spoken of; that he made the offer to exchange the Marion county farm and $10,000 cash for complainant's land, each to assume a $10,000 mortgage on the respective farms. Wright denied making the statements about the value of the orchard testified to by complainant, her husband and daughter. He testified he told VanGundy that he (Wright) knew nothing about the farm in Marion county; that defendant said it was a pretty good farm for that section and had a fine orchard on it but he had never received much benefit from it; that he had spent a large sum of money in taking care of it, until it was now where it would be profitable; that there were 8000 trees in the orchard, and that he (defendant) had received $2400 or $2500 from it. Wright further testified he told VanGundy to go and look at the land and exercise his own judgment; that he suggested to him to take a spade for the purpose of digging up and examining the soil.

The orchard has not been a profitable investment since the trade was made, but in view of the conflicting testimony, as well as the character of it, and the subject matter of the representations, it cannot be said that the decree approving the finding of the master that no such false representations were made as to justify setting aside the deed, was so palpably contrary to the evidence as to justify a reversal of the decree upon that ground. To justify a court of equity in setting aside a deed upon the ground of misrepresentations, the fact of misrepresentation must be

established by clear proof, must be about a material matter and must be relied upon by the complaining party. If the representation is as to a matter of opinion or a fact equally open to the inquiry of both parties, and in regard to which neither is presumed to trust or rely upon the other, it will furnish no basis for equitable interference on the ground of fraud. (*Tuck* v. *Downing,* 76 Ill. 71; *Young* v. *Young,* 113 id. 430; *Fauntleroy* v. *Wilcox,* 80 id. 477; *Schramm* v. *O'Connor,* 98 id. 539.) The same thing is true, also, as to the question of gross inadequacy of consideration. It may be,—in fact we think it is,—true that defendant got the best of the trade, but the testimony upon the question of values does not show such inadequacy of consideration paid by defendant as to authorize a disturbance of the decree upon that ground. We think, also, it was correctly held that no fiduciary relation existed between defendant and Dan VanGundy. (*Bishop* v. *Hilliard,* 227 Ill. 382; *Dick* v. *Albers,* 243 id. 231.) It is argued by complainant that such relation did exist between them, by reason of which and by reason of the weak mentality of Dan Van-Gundy defendant used him as his agent or ally in bringing about a consummation of the trade. This, we think, is not sustained by the testimony. The equities in the lands of the complainant and her husband in Moultrie county were worth largely more than the encumbrances, but Dan Van-Gundy owed other debts than those secured by the mortgages, which he had not sufficient funds in ready money to pay. The only conclusion we can arrive at from the testimony is that he thought defendant was offering a good trade, and as the cash payment would relieve his financial embarrassment at the time, he appears to have been willing, and even desirous, that his wife agree to the trade. He does not appear to have been a very successful financier and in the management of his business and making trades had become considerably in debt, but the proof does not sustain the theory that he was *non compos mentis* or so

weak in mind as to be unable to transact business. Many men of the strongest mentality have made unprofitable trades and have unfortunately involved themselves in debt. Men who are successful along those lines generally think those who have failed exercised bad judgment, but it does not follow that because they have done so they are mental incapables.

It was alleged in the bill that in August after the trade was made the county court of Moultrie county adjudged both complainant and her husband. distracted persons and appointed a conservator for them. Afterwards, and before this suit was brought, the conservator resigned, and no other conservator having been appointed, and complainant not having been released from the disability imposed upon her by the judgment, this suit was brought in her name by next friend. It is neither alleged in the bill nor attempted to be proven by the evidence that complainant was of unsound mind or incapable of knowing and understanding fully the nature and effect of what she was doing when she executed the deed. So far as this record shows, she is, and always has been, a woman of at least ordinary intelligence and firmness of character. The judgment of the county court was offered in evidence, and shows that on the 14th day of August, 1911, Charles Shuman presented to the court petitions for the appointment of a conservator for complainant and her husband, alleged to be distracted persons. Thereupon the court ordered a summons to issue commanding the sheriff to summon complainant and her husband to appear before the court on the same day for hearing. A hearing was had on the same day under both petitions, both parties were adjudged distracted persons and the petitioner was appointed conservator for both of them. Whether the judgment was absolutely void or not, it is entitled to little consideration in the determination of this case.

If there is any ground upon which a court would be justified in setting aside complainant's deed it would be upon the charge that complainant was in fear of her life, and acting under such fear and compulsion of her husband she signed the deed. It is undisputed that she and her husband had a serious controversy about the execution of a deed, and that the controversy reached such a stage of violence and danger that Mrs. Chipps, a daughter of the VanGundys, who was in the house with them at the time, called for help over the telephone and some neighbors came to the VanGundy house, but the testimony is in hopeless and irreconcilable conflict as to the date when that altercation occurred. The VanGundys and some other witnesses fix the date as being the 28th of March,—the day the deed was executed to defendant. Others who came when they heard of the trouble, and witnesses who learned of it the day it was reported to have occurred, testified it was on the 17th day of March, and some of them fixed this as being the date because of a certain funeral which occurred that day and which they attended. On the 17th or 18th of March, VanGundy and a man by the name of Kibbe agreed upon an exchange of lands in the State of Indiana, and a deed bearing date March 18 but executed and acknowledged March 22 was made by the VanGundys to Kibbe. Defendant insists the proof shows it was about this deed that the quarrel occurred, while complainant contends that it occurred March 28 and was about her signing the deed to defendant. If it did occur March 17 it had no connection with the deed here sought to be set aside, for the trade for the Marion county farm had not been mentioned at that time. We shall not attempt to analyze the evidence. There are matters testified to by witnesses on both sides with reference to the date of the quarrel which would make it seem improbable that they could be mistaken about the date. It is clear that one side or the other was mistaken, and, singular as it may appear, it is difficult to give

any convincing reason why the date fixed by the witnesses on one side should be accepted in preference to the date fixed by the witnesses on the other side. The master found and reported, and the report was approved by the decree, that the assault upon complainant by her husband did not occur on the day she signed the deed to defendant. The testimony upon this question is so evenly balanced that we cannot say the finding and decree were unwarranted.

Upon the merits this case depends largely upon questions of fact. The case has been argued elaborately and with great ability. We have given it careful consideration, and while we have only briefly referred to the voluminous testimony, we have examined it with care and are satisfied we would not be warranted in reversing the decree upon the ground that it is contrary to the evidence. We might have disposed of the case without full consideration of its merits, on the ground that complainant's husband was not made a party to the bill. He had received and held the title to the land and personal property in Marion county and we think he was a necessary party. But we concluded to look into the merits of the case, and decided, after doing so, that as in our view complainant would not have been entitled, under the evidence, to the relief prayed even if her husband had been made a party, we prefer to base our decision upon that ground. While we are impressed that the trade between complainant and defendant was not a profitable one for complainant, the proof does not show that there was any such fraud, misrepresentation or deception practiced by defendant upon the VanGundys as to justify a reversal of the decree, and it is therefore affirmed.

*Decree affirmed.*