(No. 20987.—

Lavada S. Stipanowich, Defendant in Error, *vs.* Rebecca A. Sleeth *et al.*—(Rebecca A. Sleeth, Plaintiff in Error.)

*Opinion filed June 24, 1932.*

JESSE HEYLIN, (WILLIAM C. WORLEY, and RUSSELL E. TOWNSEND, of counsel,) for plaintiff in error.

FRED H. SNYDER, for defendant in error.

CHIPERFIELD & CHIPERFIELD, for George E. Sleeth *et al.*

Mr. COMMISSIONER EDMUNDS reported this opinion:

Lavada S. Stipanowich filed a bill in the circuit court of Fulton county praying partition of certain real estate in accordance with the terms of a written contract. Rebecca A. Sleeth, George E. Sleeth, Francis C. Sleeth and others, who were made defendants, filed answer, and Mrs. Sleeth filed a cross-bill, which was subsequently stricken. The cause was referred to a master, who recommended that the complainant be awarded relief, and a decree was entered accordingly. The cause is here on writ of error sued out by Rebecca A. Sleeth.

On July 10, 1926, John C. Sleeth died testate, leaving Rebecca A. Sleeth, his widow, and Francis C. and George E. Sleeth and Lavada S. Stipanowich, his children, his only heirs-at-law. Mrs. Sleeth is the mother of Lavada but not of Francis and George. In the will the Canton National Bank was named executor. The will has never been probated, and it remained at the bank until produced at the hearing of this cause, at which time it was impounded by the master. By its terms Mrs. Sleeth was awarded testator's homestead property on Pine street, in Canton, for her lifetime. Other provisions were that the remainder of the estate was to be sold and the proceeds divided into four equal portions, one of the portions to go to Mrs. Sleeth and one to each of testator's children. At the time of his death John C. and Rebecca Sleeth were living in the Canton property. Each owned an undivided one-half interest in it. Sleeth had no other real estate at that time. In 1920 he and Mrs. Sleeth had conveyed two other tracts to one Mulcahey for $38,400. In consideration therefor Mulcahey

paid Sleeth $13,400 in cash and gave his note for $25,000 and a trust deed to Claude E. Chiperfield, trustee, to secure said note. On August 7, 1926, the following instrument was signed, sealed and acknowledged before a notary public by all the parties named therein:

"This indenture, made and entered into this 7th day of August, A. D. 1926,

"Witnesseth: By and between the parties hereto, Mrs. Rebecca A. Sleeth, widow, Francis Sleeth, son, George Sleeth, son, and Lavada Sleeth Stipanowich, daughter, and sole heirs-at-law of John C. Sleeth, deceased, do hereby enter into this agreement for the purpose of an amicable settlement of the estate of the said John C. Sleeth, deceased, among and between the above named and foregoing heirs-at-law;

"That is to say, we, and each of us, hereby agrees that the entire estate of the said John C. Sleeth, deceased, shall be inventoried at its fair market cash value, including all personal property and all real estate, chattels, moneys and credits, and the entire said estate shall be divided into three equal parts, one-third (1/3) part or portion of said estate shall be given absolutely unto the widow, Rebecca A. Sleeth, as and for her own property, absolutely and forever, the other two-thirds (2/3) part and portion shall be divided into three (3) parts and each of the said children, Francis, George and Lavada, shall receive a one-third (1/3) part and portion of said two-thirds part, sharing equally and alike; and we do hereby authorize and empower E. A. Heald, president of the Canton National Bank, to make division and distribution of said estate among and between the above and foregoing heirs-at-law.

"It is further hereby agreed between the parties hereto that the homestead located on West Pine street, in Canton, Illinois, together with its contents of furniture, fixtures, carpets, rugs and all other furnishings belonging to the estate of John C. Sleeth, shall be deeded over unto the said Rebecca A. Sleeth, widow, at a net valuation of $5000, which the said Rebecca A. Sleeth hereby accepts and agrees to receive as her share and portion of said estate to the extent of the sum of $5000, and she is to receive the remainder of her one-third share and portion in moneys, securities or credits, and the said Rebecca A. Sleeth hereby agrees and promises to return and pay over unto said estate the sum of $1200 received by her from her late husband prior to his decease, which said sum shall become a part and portion of said estate to be divided and distributed as above provided.

"This agreement shall be binding upon ourselves and our heirs, absolutely and forever."

The principal issue in the case is whether there was error in decreeing that the terms of this instrument be carried out. The master and chancellor found that it was free from all fraud and misrepresentation, that no fiduciary relationship existed between Mrs. Sleeth and the other parties to the suit at the time of its execution, and that it was a good and valid contract. Mrs. Sleeth insists, however, that it did not represent the true agreement between the parties; that she did not enter into it understandingly; that E. A. Heald, who advised her to execute it, did not understand the situation as to her interests, and that, considering all the facts in connection with the relationship to her of those who had a part in its preparation and execution, it should be canceled, or, at any rate, should not be enforced against her.

The following quotation from the abstract sets forth the only testimony given by Mrs. Sleeth as to the circumstances under which the instrument was prepared: "After the death of Mr. Sleeth we all met and went to Mr. Heald for advice and appointed him our administrator, and he advised me this, first, to make a settlement. 'You know you saw that contract.' That was all through Mr. Heald. He was the only one who gave me any advice to that effect. Contract drawn, he said get a fourth—little more than I would get in court. Going to settle out of court. This meeting was held at the Canton National Bank. Those present were the two boys, George E. Sleeth and Francis Sleeth, my daughter, Mrs. Stipanowich, and Mr. Heald, when the contract was drawn up. Mr. Heald is the only one I took advice from until after the contract was drawn. I had not consulted any attorney at that time and had not been advised of my rights under the statute. There was no discussion at that time about my individual interests in the various real estate tracts."

E. A. Heald, president of the Canton National Bank, testified that prior to the time the agreement was made he

did not know Mrs. Sleeth; that John C. Sleeth had been a depositor and customer and had left his will in the special care of the bank; that shortly after Sleeth's death the family met there to hear the will read; that it was later proposed to set aside the will and settle the estate in accordance with a certain agreement that witness was instructed to draw up and which the family all signed; that the family had decided among themselves that the agreement was better for all concerned because Mrs. Sleeth objected to the terms of the will; that witness had never had any conversation with Mrs. Sleeth about her husband's business or her own; that witness never did advise or assume to advise Mrs. Sleeth as to her legal rights as Sleeth's widow; that witness "did not have to—they knew what they wanted when they came to me;" that they wanted to set the will aside and enter into a family agreement; that they asked him if they could do it; that he did not have any part in arriving at the agreement and merely stated in it what they had arrived at among themselves; that he did not know, and thinks the family did not know at the time, that Mrs. Sleeth was the owner of one-half of the homestead in her own right and that it was not mentioned to witness, and he thinks not to anyone present at the time, that a part of the land conveyed to Mulcahey was also the individual property of Mrs. Sleeth.

George E. Sleeth testified that after his father's death he had a talk with Mrs. Sleeth about the will; that she was dissatisfied with the will; that after this conversation the family had a meeting at her house; that Mrs. Sleeth said she was dissatisfied with the will and could hold one-third; that the children told her all right—they would give her one-third; that she said, "Straighten it up without having any lawyer;" that after agreeing on the terms of settlement she said they would get ready and go to the bank to have Heald make out the agreement; that they went to the bank and saw Heald; that up to that point neither wit-

ness nor his brother attempted to advise Mrs. Sleeth as to what her rights were; that Heald did not advise her as to her rights, and that the agreement was the same one that was reached at the house and was reduced to writing by a girl working for Heald. It was stipulated that the testimony of Francis C. Sleeth would be the same as that of George.

Mrs. Stipanowich testified that after her father's death there was a meeting of the family at the bank to hear the will read; that the contract was drawn up "to keep things out of court," and that it was signed by all without objection.

Courts of equity favor the settlement of disputes among members of a family by agreement rather than by resort to law, and the validity of such contracts has been repeatedly recognized by this court. (*Cole* v. *Cole,* 292 Ill. 154.) The master and chancellor were well warranted in finding that the agreement here involved was free from fraud or misrepresentation. We see no sufficient basis for acceding to Mrs. Sleeth's contention that there was present a fiduciary relationship between her and the others who were concerned in its making. (*VanGundy* v. *Steele,* 261 Ill. 206; *Bishop* v. *Hilliard,* 227 id. 382.) No ambiguity is apparent in its terms, and unless there is ambiguity in the language of a contract the meaning must be determined from the words used and from no other source. (*Englestein* v. *Mintz,* 345 Ill. 48.) It is apparent that Mrs. Sleeth was dissatisfied with the will and that she herself took the lead in what was done to effect a settlement of property interests through the medium of a contract. The chancellor rightly held that such contract should be given effect.

It is contended that the agreement should not be enforced because it is without consideration and unfair. One ground upon which this contention is based is the testimony of Mrs. Sleeth that it was understood between her and her husband that she herself was to get $6400 out of the Mulcahey note. A further argument is that if the will had

been offered for probate Mrs. Sleeth could have renounced its provisions and taken under the law of descent; that she would have have been entitled to a widow's award; that she was already the owner of one-half of the homestead property in Canton; that she would have had a homestead interest in the one-half that she did not own and one-third of this one-half subject to her homestead; that the agreement charges her with $5000 for the homestead although the master found the entire value of the property to be $4150, and that it is thus apparent that under the agreement which it is sought to enforce she is, in effect, deprived of the greater consideration which she could have obtained by simply renouncing the will. The argument is not convincing. Leaving out of account the propriety of according consideration to her testimony as to claims arising out of financial transactions between her and her deceased husband, the record discloses, as we have already indicated, that she raised objections to the will and was aware that she had rights apart from it and that she took the lead in the transactions which resulted in the agreement which she now attacks. In *Leach* v. *Fobes,* 11 Gray, 506, where there was involved a bill to enforce a family agreement, the court said: "Such contracts are not against public policy. On the contrary, as they contribute to the peace and harmony of families and to the prevention of litigation, they will be supported in equity without an inquiry into the adequacy of the consideration on which they are founded." Citing this case, we announced the same rule in *Dunham* v. *Slaughter,* 268 Ill. 625. Consideration to support the agreement in the case at bar exists in the mutual concessions of the parties thereto. (*Cole* v. *Cole, supra.*) The record is barren of any showing that Mrs. Sleeth was imposed upon or that she did not enter into it of her own full free will and accord, and it is apparent from her own testimony that at the time she executed it she was aware of the interests which

she now claims it takes from her. Where the parties are competent to contract and enter into a contract fairly and understandingly, with the wisdom or folly of their contract, made for a consideration and without fraud, courts have no concern. (*Keogh* v. *Peck,* 316 Ill. 318.) Courts of equity function for the purpose of enforcing contracts rather than for their evasion. It is the general rule that inadequacy of consideration, exorbitance of price or improvidence in a contract will not, in the absence of fraud, constitute a defense to a bill for specific performance. (*Chicago Title and Trust Co.* v. *Merchants Trust Co.* 329 Ill. 334; *Kuehnle* v. *Augustin,* 333 id. 31; *Smith* v. *Smith,* 340 id. 34.) We see no sufficient reason for departing from that rule here.

The contention is made that striking the cross-bill from the files was reversible error. The cross-bill raised the issue of the validity of the agreement which the bill sought to enforce and prayed that it be canceled. The same issue was raised by the answer and was fully presented thereby. Under the circumstances here disclosed there was no error in the ruling made. *Roby* v. *South Park Comrs.* 252 Ill. 575.

It is further contended that the record discloses a non-joinder of a necessary party and that the objection is one which may be taken on appeal. The party thus alleged to be necessary is the Canton National Bank, executor of John C. Sleeth's will. The contention is without merit. This proceeding was brought to enforce an agreement which was calculated to, and did, supersede the will, which was never probated. *Cole* v. *Cole, supra.*

The decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*