George Velcich and Anna Velcich, Appellees, v. Thomas Malesh et al., Appellants.

Gen. No. 38,231.

Opinion filed February 19, 1936.

ERWIN W. ROEMER, of Chicago, for appellants.

VICTOR I. OHRENSTEIN and IRENE M. LEFKOW, both of Chicago, for appellees.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

A decree was entered against the defendants in the circuit court on March 7, 1935, from which this appeal is taken. By its terms it removed a cloud upon the title of certain property, compelled specific performance of the delivery of a certain deed and provided for an accounting between the parties and for the entry of judgment at common law.

From the bill of complaint it appears that the plaintiffs and the defendants had traded certain pieces of real estate with each other and the plaintiffs claimed that they were defrauded.

Plaintiffs further alleged that the plaintiff George Velcich was a poor laborer who could not read or write

the English language but only the Croatian language and that the defendants were experienced real estate men who spoke the Croatian language; that they relied upon defendants; that they gave a deed to their property to defendants and thought the defendants were giving them a deed to defendants' property, in exchange, but, after five years, they found out that they had received a contract for a deed to purchase defendants' property.

During the several intervening years, between the transaction and the filing of the bill of complaint, plaintiffs allege they continued to pay defendants at the rate of $70 per month and interest, which was in accordance with their written contract to purchase, stating that they thought they owned the property and were paying this sum each month to pay off the $6,000 mortgage which was on the property.

Subsequently, suit was commenced in the municipal court by the owners to obtain possession of the property on account of plaintiffs' default in the payments on the contract for the sale.

From the abstract it appears in evidence that the real estate which the plaintiffs had conveyed to the defendants was incumbered by a mortgage which had been foreclosed and that then the defendants found it necessary to convey the same to the owners of the mortgage for about $600 with the result that the title to the real estate was conveyed into the hands of third parties. The prayer of the bill asks a setting aside of part of the transaction and the specific performance of the balance.

The defendants deny all the charges of fraud as contained in the bill and allege that the transfer of the property was fair and aboveboard and that no deception was practiced upon the plaintiffs in the transfer of the property.

The evidence shows that the plaintiff George Velcich, instead of being a poor laborer, had been engaged in

the grocery business and, of necessity, he must have had some business acumen and experience; that he had had several other real estate transactions and was fairly experienced in that regard; that the plaintiffs had been taken to see the building and the property of the defendants by real estate men and were familiar with it and then came back to the real estate office and made their offer which was accepted and entered into negotiations as to price and terms which, after a time was agreed to by both sides; that the deeds of conveyance and other documents were executed by November 13, 1928, by the plaintiffs at their home and in the presence of three disinterested witnesses as well as one of these defendants. These witnesses, or at least two of them, testified that the papers were read and translated into the Croatian language and explained to and were understood by the plaintiffs.

The evidence further shows that on March 23, 1931, the loan on the Wells street property which plaintiffs had obtained in the transaction became due and the defendants secured a renewal of the loan thereon at the bank. Plaintiffs went to the bank and signed the renewal of said mortgage, thereby approving the transaction.

One of the significant things about the transaction is the fact the articles of agreement for the purchase of defendants' property which plaintiffs claimed they understood was a warranty deed was not placed of record in the recorder's office until May 2, 1932, some three and a half years after the transaction. If plaintiffs believed that they had a deed to defendants' real estate the natural and usual thing for them to do upon receiving it, would be to place it on record within a reasonable time. In addition to this, for several years the plaintiffs made some 44 interest payments and 28 principal payments which were entered on the back of the contract, which sums were the exact amount of

principal and interest which the contract provided should be paid by plaintiffs in accordance with its terms.

Plaintiffs claim that they do not understand the English language and for that reason were at a disadvantage when the exchange of properties took place. The evidence shows that at the time the transfers took place the papers were all read to them in English and explained to them in the Croatian language, which is their native tongue.

In the case of *Van Gundy v. Steele,* 261 Ill. 206, the court at page 214 said: "To justify a court of equity in setting aside a deed upon the ground of misrepresentations, the fact of misrepresentation must be established by clear proof, must be about a material matter and must be relied upon by the complaining party. If the representation is as to a matter of opinion or a fact equally open to the inquiry of both parties, and in regard to which neither is presumed to trust or rely upon the other, it will furnish no basis for equitable interference on the ground of fraud."

In the case of *Shulman v. Moser,* 284 Ill. 134, the court said:

"The court overruled an objection of the defendant to a question propounded to Victor Kanter as to whether he understood the contract, and he testified that he could only read a couple of the easy words at the top; that he had only been in the third reader; that the defendant said he must sign the papers, otherwise the building would not be taken good care of; that defendant said he could sign them at home and did not say he could not have them read to him, and that he signed the contract of his own free will. The witness had formerly been in business for himself running a tailor shop, and when the lease was made he owned two buildings,—the one on Franklin boulevard and the other on Wabansia avenue,—one containing twenty-

two flats and the other fifteen flats. His testimony shows clearly that he knew what was in the contract and that he could have read it if he saw fit, and it was his duty to do so. *Chicago, Rock Island and Pacific Railway Co. v. Hamler*, 215 Ill. 525.

"The suggestion of counsel that the plaintiff was an illiterate woman, reading and writing the English language with difficulty, and that she signed the notice to quit by means of her mark, is wholly outside of any question involved in the case. Illiteracy is not a defense to a contract, and if a party to a contract cannot read an instrument it is as much his duty to have it read to him before he signs it as it would be to read it before signing if he were able to do so. (9 Cyc. 390; 6 R. C. L. 325.)"

In addition to the testimony showing that the contract had been read to plaintiffs at the time of the signing of same, and later by an attorney who also spoke the Croatian language and who testified without objection that he read, translated and explained the contents of the contract to them, the testimony further shows that plaintiffs had members of their family who read and wrote the English language and had attended school in this country, and if plaintiffs had desired they could have had it read and explained to them by members of their family. It would be a dangerous practice and would almost entirely destroy the sanctity of business transactions if one could, after nearly five years, have contracts voided and set aside because he claimed he was unable to read the English language. Plaintiffs knew at the time of the transaction of their handicap in this regard and it was their duty to obtain such aid and assistance before entering into the transaction as would place them on an equal footing with their opponents or at least give them the necessary information as to what the transaction meant. Plaintiffs at this late day should not be permitted to complain that

they were overreached by reason of such a disability which they could have guarded against by the use of ordinary business prudence.

We do not think a satisfactory explanation has been made as to the delay in filing this suit. Even assuming that the evidence shows that plaintiffs did not understand the contract they signed when the transaction was entered into, the evidence clearly shows that it was fully explained to them six months later by their own attorney and plaintiffs should then have immediately filed their suit as was their duty upon discovering the alleged fraud.

In *Kanter v. Ksander*, 344 Ill. 408, the court said:

"A party to a contract who desires to rescind it for fraud must make his election to do so promptly after learning of the fraud. He must announce his purpose and adhere to it. (*Huiller v. Ryan*, 306 Ill. 88; *Greenwood v. Fenn*, 136 id. 146; *Hansen v. Gavin*, 280 id. 354.)"

From the evidence before us, plaintiffs, not having commenced their suit upon the discovery of the alleged fraud and, having delayed doing so until several years later, are guilty of laches.

It is further claimed by the plaintiffs that a fiduciary relationship existed between the plaintiffs and the defendants and that they were taken advantage of by the defendants. Although there is some testimony that they were acquainted with the defendants in a minor social way prior to the transaction, there is no evidence that the relationship of attorney and client, principal and agent, or any of the well known relationships which makes the one a superior or dominant party and the other a dependent servient party, existed and does not place the burden upon the defendants to account to the plaintiffs for any transaction or render the transaction prima facie fraudulent.

The briefs filed here on behalf of the defendants refer to this suit as one for the rescission of a contract, and the briefs filed on behalf of the plaintiffs designate the action by them as one for specific performance. Assuming the latter, it must be noted that specific performance is not a matter of absolute right, but in a large measure rests in the sound discretion of the court to be exercised as circumstances require.

In the instant case the terms of the oral contract of conveyance, which the plaintiff wishes to enforce, differ materially from the written contract in evidence and the proof of said oral contract depends almost wholly upon the testimony of the plaintiffs which is contradicted by several witnesses in many vital particulars. Specific performance of a contract will not be decreed unless the evidence of its terms is clear and convincing. Such a contract will not be specifically enforced unless the terms are clear, certain and unambiguous and either admitted by the pleadings or proved with a reasonable degree of certainty. *Quinn v. Daly,* 300 Ill. 273; *Dreiske v. Eisendrath Co.,* 214 Ill. 199; *Brach v. Matteson,* 298 Ill. 387.

We are not satisfied that the plaintiffs have shown a clear right to the interposition of a court of equity to grant them relief by way of specific performance.

For the reasons herein given the decree of the circuit court is reversed and the cause is remanded for a new trial.

*Decree reversed and cause remanded.*

HALL, P. J., and HEBEL, J., concur.