(No. 76-CC-0243—

HOEFFKEN BROS., INC., Claimant, *v.* STATE OF ILLINOIS and DEPARTMENT OF TRANSPORTATION, Respondent.

*Opinion filed April 4, 1979.*

TYREE C. DERRICK, F. W. MUELLER, and JOHN J. VASSEN, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant seeks to recover the sum of $68,391.88 which it alleges is due either as "extra work" pursuant to Article 101.15 of Respondent's Standard Specifications for Road and Bridge Construction, or pursuant to Article 104.04 of said Standard Specifications providing for Changed Conditions.

The contract in question called for the widening and resurfacing of a section of Federal-aid Route No.

13, approximately one and one-half miles long in and near Fairview Heights, Illinois. The project number was U-235 (22) Sec. 34-1.

The road in question is approximately 40 years old and the contract was let on October 30, 1973. Work was scheduled to proceed within ten days after the contract was received but due to an agreement between the Department of Transportation and the City of Fairview Heights, Illinois, an extension was granted so the streets would not be torn up during the Christmas holiday. Work actually started in March of 1974.

The dispute centers around work to be done on the pavement which was replacement or patching. It is Claimant's contention that patching was not contemplated when the contract was entered into and, according to their evidence, patching was paid for at the rate of between $50.00 and $60.00 per square yard; whereas replacement is approximately $15.00 per square yard.

The very first day the job was started, the engineer in charge requested Claimant to do patching. This was objected to by Claimant on the grounds that patching was not called for in the contract and was not anticipated in making the bid. The dispute between the State engineers and the contractor was resolved by an agreement that Claimant would submit a bill as a force account and that blacktop would be substituted for concrete.

The portion of the contract that deals with this subject was contained on page eight of the plans and was introduced as Claimant's Exhibit #4 and stated:

"Where pavement patching is required as determined by the engineer it will be removed and replaced and will be paid for at the contract unit price for pavement replacement."

Item No. 619001 of the pay items set forth in the contract, (Joint Exhibit 2) stated that the unit price for pavement replacement as established by the contract was $15.00 per square yard.

Article 105.05 of the Standard Specifications (Joint Exhibit 3) provides as follows:

"Coordination of Plans, Specifications, Supplemental Specifications, Proposal, and Special Provisions. These specifications, the Supplemental Specifications, plans, proposal, special provisions, and all supplementary documents are intended to describe a complete work and are essential parts of the contract. A requirement occurring in any of them is binding. In case of discrepancy, calculated dimensions will govern over scaled dimensions; plans will govern over specifications; supplemental specifications will govern over specifications; and special provisions will govern over both specifications and plans. The contractor shall take no advantage of any apparent error or omission in the plans or specifications, and the engineer shall be permitted to make such corrections and interpretaions as may be deemed necessary for the fulfillment of the intent of the plans specifications."

Another item in dispute for which Claimant seeks to recover is for the amount due for traffic control where patching was being done. Claimant contends that where patching was done it is entitled to additional compensation to cover the traffic control expenses.

Traffic control with respect to patching is mentioned in the contract documents (Joint Exhibit 2). Standard Design 2315 (Joint Exhibit 1 and Respondent's Exhibit A) sets forth the method of traffic control for pavement patching. Claimant was paid for this type of traffic control, item number XZ1088 of the pay items listed in the contract (Joint Exhibit 2) in the amount of $33,900.00.

While Claimant alleges the contract does not provide for patching, Standard Design 2116 is a part of the contract documents (Joint Exhibit 1 and Respondent's Exhibit B) and refers to the patching work. This position is strengthened by Joint Exhibit 3, which included

Article 105.05 of the Standard Specifications, in which it states that in case of discrepancy, plans will govern over specifications.

All the evidence tends to support Respondent's position that both parties were fully aware of all the conditions of the contract which was entered into voluntarily and that there was no fraud or ambiguity.

Claimant makes the contention that the patching work should be classified as "extra work" and paid for accordingly

Section 101.15 of the Standard Specifications states:

"Extra Work. An item of work not provided for in the contract as awarded which is found essential to the satisfactory completion of the contract within its intended scope as determined by the engineer."

It does not appear from the record that any of the work for which compensation is requested would fall into the category of "extra work" but only work that was contemplated at the time the contract was entered into.

Claimant's contention is that there was no mention in the contract document about traffic control during patching. This is contradicted by Standard Design 2315 (Joint Exhibit 1) which described the method of traffic control for pavement patching. This, in the opinion of the Court, is what Claimant bid on and was paid accordingly.

On page 19 of Claimant's brief, a statement is made that Section 602.13 of the specifications require the payment of $55.00 per square yard for the patching work done by Claimant. In fact, Section 602.13 provides the basis for pavement patching to be at the contract unit price per square yard for pavement removal and replacement.

Claimant, in its brief, makes an allegation that is not substantiated in the record. He alleges his costs were increased by the patching because he had to use jack hammers rather than back hoes. The fact, although not appearing in the record, is that Claimant used a back hoe for this patching instead of a jack hammer.

It is the finding of this Court that Claimant was aware when the contract was entered into between the parties of the paragraph on page eight of the plans which stated that pavement patching as required would be paid for at the contract unit price for pavement replacement, and that the unit price for pavement replacement was $15.00 per square yard and that this price was included in the contract between Claimant and Respondent.

The Court also finds that in accordance with the Standard Specifications, Article 105.05 providing that plans governed over specifications in the event of a discrepancy, likewise constitutes a part of the contract between the parties.

It is the further finding of this Court that no discrepancy existed and the fact that the patching work and contract documents quite clearly indicated the need for patching and the amount to be paid therefore.

The Court further finds that there is nothing in the contract documents indicating that the patching work was to have been paid at the rate of $50.00 per square yard.

In cases involving the enforcement of a contract, there is a general principle that is often repeated by the Courts. In substance, it states that when parties are competent to contract and they enter into a contract

without fraud, then it is of no concern to the Court whether they entered into the contract with wisdom or folly. If the parties overlook a condition which they would perhaps have provided for if it had occurred to them, the Court will not guess as to what provision they would have made, nor by construction will the Court read into an instrument a term on the presumption they most likely would have included the term if they had thought of it. See *Green v. Ashland State Bank, 356 Ill. 174, (183); Stipanowich v. Sleeth, 349 Ill. 98, (103, 105).*

Award is hereby denied.