(No. 27888.—

THE COUNTY OF HAMILTON, Appellant, *vs.* A. H. SLOAN *et al.,* Appellees.

*Opinion filed May 16, 1944.*

M. E. Buck, State's Attorney, W. W. Daily, and Harry Anderson, all of McLeansboro, for appellant.

George W. Hogan, Jr., and Fred W. Underwood, both of McLeansboro, and Hart & Hart, of Benton, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, the county of Hamilton, filed its complaint in the circuit court of Hamilton county seeking an accounting and specific performance of a contract covering the purchase of real estate, consisting of a bank building in McLeansboro, from defendants, A. H. Sloan, David J. Underwood and Elwood Barker, as trustees and record title holders, and numerous other defendants, described as having a possible interest in the property. To the complaint, as subsequently amended, defendants filed a motion to dismiss. This motion was sustained, plaintiff elected to stand by its pleading, and a decree was entered dismissing the complaint. A freehold being involved, a direct appeal has been prosecuted.

From the facts disclosed by the complaint, as amended, and admitted by defendants' motion to dismiss, it appears that, in 1926, Terry Sneed was elected treasurer of Hamilton county. Certain defendants and their predecessors acted as sureties upon his official bonds. In 1930, the First National Bank of McLeansboro, depositary of county funds, became insolvent. A receiver was appointed, liquidation followed and, after distributions and dividends to depositors, a deficit of $13,506.32 remained owing to the county, for which the sureties on the official bonds of Sneed became individually liable. On December 8, 1931, by receiver's deed issued pursuant to court order, defendant trustees, acting for and on behalf of the sureties, acquired title to the bank building, together with other real estate and personal property constituting assets of the defunct bank.

The county of Hamilton did not, at the time, own a courthouse, and was compelled to rent a suitable building for this and other required county purposes. On December 8, 1931, the county, by resolution adopted by its board of supervisors, entered into an agreement with the trustees, on behalf of the sureties, by which the trustees agreed to place the bank building in proper condition and to lease to the county, for a period from January 1, 1932, to January 1, 1938, the second story of the building to be used for a courtroom, offices and meetings for the benefit of the public. In addition to assumption of a portion of certain maintenance expenses, the county obligated itself to pay as rent the sum of $1000 per year, in quarterly instalments of $250. The complaint alleges that the lease was entered into by the county to enable the trustees and Sneed's sureties to liquidate, without the necessity of raising cash, their obligation to the county of Hamilton, and that the county would, upon the termination of the lease, have the option of purchasing the real estate. On the same date, December 8, 1931, the board of supervisors of Hamilton county adopted a resolution authorizing the execution of an agreement with the "Trustees of Purchasers of First National Bank Building and Lot," reciting, among other things, that, upon the expiration of the lease, and upon the full payment and discharge, out of rents, issues and profits of the building, of the deficiency of moneys on deposit in the First National Bank owing on the bonds of Sneed, as county treasurer and ex officio collector, the trustees would convey to the county the real estate in controversy for a consideration of $7600 in cash. On December 15, 1942, David J. Underwood, A. H. Sloan and Elwood Barker, as "Trustees of Purchasers of First National Bank Building and Lot," prepared and filed with the county clerk, a "Notice of Partial Completion of Contract and Offer to Convey * * * to the County of Hamilton, Upon the Receipt of the Agreed Purchase Price." This notice recited payment in full of

the money formerly deposited by Sneed in the First National Bank, and expressed the willingness of the trustees to complete the agreement by conveying the real estate upon receipt of the sum of $7600. Thereafter, on January 2, 1943, a resolution was adopted by the board of supervisors, recounting, among other things, the payment and discharge of the deficiency owed by the sureties on the bonds of Sneed, the tender by the trustees of the property upon the payment of $7600 in cash, and the county's acceptance of the trustees' offer so to convey. Next, is alleged the adoption of a resolution authorizing L. E. Cross, chairman of the board of supervisors, to serve a written demand and authorizing payment by him of the sum of $7600 to the trustees upon receipt of a properly executed deed. Then follow allegations as to service of the demand, January 25, 1943, upon the trustees, and the subsequent and continued refusal of the trustees to comply. Finally, plaintiff alleges its constant readiness and ability to pay, and its offer to bring the sum of $7600 into court to be paid to defendants upon delivery of a proper deed by the trustees or their successors.

To sustain the decree of dismissal, defendants, as in the circuit court, challenge the sufficiency of the allegations of the complaint to disclose an enforceable contract, supported by a valid consideration. It is urged that the alleged option agreement, being merely an offer in the nature of a unilateral contract, required acceptance by the county in the manner and form provided by its terms before it could ripen into a valid bilateral agreement. This is a correct statement of the law pertaining to option agreements. (*Lake Shore Country Club* v. *Brand,* 339 Ill. 504.) It is contended that the complaint is deficient with respect to compliance with the terms of the option agreement because of failure of its allegations to show (1) a valid consideration; (2) compliance by the county, or its ability so to comply, with its conditions, and (3) the need of the

premises for county purposes at the time of the alleged acceptance. Unless a contrary intention is manifested, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction, are regarded as one instrument and will be construed together as if they were as much one in form as they are in substance. (*Nelson* v. *Colegrove & Co. State Bank,* 354 Ill. 408.) Here, the contemporaneous execution, under seal, of the lease and option, as part of the same transaction, requires that they be deemed one inseparable contract. The validity of the lease is conceded. Provisions extending to tenants the privilege of purchasing demised premises are commonly contained in leases. The agreement to pay rent is, alone, sufficient to support the option, as well as right of occupancy under the lease, and to bind the lessor, irrespective of the lessee's lack of obligation to purchase. *Garlick* v. *Imgruet,* 340 Ill. 136.

As a basis for the second ground of inadequacy of the complaint, the familiar rule is invoked that counties possess only the statutory powers granted to them, and it is insisted that statement of a good cause of action necessitates a showing in the complaint that the acts relied upon to justify specific performance are within its statutory powers. From this premise is argued the necessity for plaintiff to show either a proper tender of actual cash to defendants or the availability of cash for this purpose, in accordance with the statute. Noncompliance in this respect is manifest, defendants maintain, from the omission to allege execution of an order capable of countersignature by the treasurer and delivery to a payee, as, it is urged, is contemplated by section 9 of "An Act to revise the law in relation to county treasurer." (Ill. Rev. Stat. 1943, chap. 36, par. 9.) This section provides that no money or funds shall be paid out of any county treasury except in accordance with an order of the county board, or when payment is specially authorized by law to be made. This requirement, defend-

ants insist, is not satisfied by a resolution merely authorizing the treasurer or chairman of the county board to pay. Also relied upon is the failure to allege a previous appropriation of the $7600 to be tendered, in accordance with section 4 of "An Act in relation to the budgets of counties not required by law to pass an annual appropriation bill" (Ill. Rev. Stat. 1943, chap. 34, par. 110j) which prohibits the making of any contracts adding to county expenditures or liabilities in any year in excess of the amount appropriated and provided for in the annual budget for the fiscal year involved. Finally, defendants characterize as a mere conclusion of law plaintiff's allegation that it is ready, willing and able to pay the amount, because of claimed omission to show a fulfillment of requisite preliminary steps establishing its ability so to pay. From a failure, in the respects mentioned, to allege a compliance with these and other specified provisions, it is argued that the inability of the county to fulfill the conditions of the option agreement is apparent, disclosing an agreement on its part to perform acts expressly prohibited by statute. *Duck Island Hunting and Fishing Club* v. *Gillen Dock, Dredge and Construction Co.* 330 Ill. 121, *Dement* v. *Rokker*, 126 Ill. 174, and other authorities upon which defendants place reliance, are inapplicable. The complaint discloses that, in 1930 and 1931, the county of Hamilton was without suitable facilities for courthouse and other purposes essential to the transaction of its affairs. Confronted with this emergency, a duty rested upon the county board to take appropriate action to remedy the existing deficiency. Sections 24, 25 and 26 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1943, chap. 34, pars. 24-26,) confer ample power upon the county board for this and like purposes. In the exercise of these powers, the county board is vested with discretion to determine the necessity and the financial ability of the county to assume such obligations without a previous levy, being bound only by the constitutional provi-

sion prohibiting it from incurring indebtedness beyond pre-scribed limitations. In *Hall* v. *County of Cook,* 359 Ill. 528, an architect brought an action to recover for services rendered incident to the construction of a municipal build-ing for Cook county. Commenting upon and approving *County of Coles* v. *Goehring,* 209 Ill. 142, this court ob-served: "When in good faith and without fraud the county board determines the finances justify the erection of a courthouse, the person with whom the contract is made to erect the building is not required to inquire into the correct-ness of its determination. The Board's action upon the matter is conclusive and controlling. * * * the limita-tion on the power to levy taxes is not necessarily a limita-tion on the power to contract a debt." Obviously, the county board of Hamilton county possessed the inherent power to enter into the contracts to lease and purchase the real estate in controversy, and the allegations of the com-plaint demonstrate its readiness and ability to carry out the terms of the agreements executed. Likewise, there being a valid consideration to support the option agree-ment, there is no merit to defendants' further contention that mutuality of obligation between the parties is lacking, thereby rendering the contract incapable of enforcement on the part of defendants.

The remaining contention has for its basis the claimed failure of the complaint to allege that the real estate is now required for courthouse or other county purposes. It is urged the absence of such an allegation is tantamount to an admission that the county now possesses an adequate courthouse. This action is based upon the contract orig-inally entered into on December 8, 1931, its expressed pur-pose being the acquisition of premises for use as a county courthouse, and has been instituted to enforce the contract by fulfillment of the county's option. The complaint con-tains sufficient allegations of a proper purpose, and the presumption obtains that this action seeks enforcement of

the original contract, and that its object, admittedly legitimate when made, has not ceased to be valid. In short, whether plaintiff now has an adequate courthouse is a question of fact which must be determined under a proper answer. We are not, at this time, concerned with the adequacy of such an answer to plaintiff's pleading. To support their claim, defendants direct attention, however, to the second count of plaintiff's original complaint, alleging generally the enhancement in value of the property, its possible sale at a profit of $5000, and the consequent damage to plaintiff in this amount by defendants' refusal to convey. It is argued that this count shows on its face the desire of the county to purchase the real estate merely for speculative purposes, rendering it illegal and void. A sufficient answer to this contention is that the count in question is no longer a part of plaintiff's statement of its cause of action, having been dismissed upon its motion before the hearing on defendants' motion to dismiss.

The decree of the circuit court of Hamilton county is reversed and the cause is remanded, with directions to overrule defendants' motion to dismiss plaintiff's complaint, as amended.

*Reversed and remanded, with directions.*