(No. 31236.—

CITIES SERVICE OIL COMPANY, Appellee, *vs.* E. F. VIERING, Appellant.

*Opinion filed November 22, 1949—Rehearing denied Jan. 12, 1950.*

SHELDON & BROWN, and ALEXANDER L. HAGLUND, both of Sterling, for appellant.

BESSE & BESSE, of Sterling, (KENNARD J. BESSE, and L. VERNON FRYE, of counsel,) for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a decree entered by the circuit court of Whiteside County in favor of appellee, Cities Service Oil Company, a corporation, in a suit filed by it against E. F. Viering, the appellant, to compel the conveyance of certain real estate in the city of Rock Falls in that county, upon which said real estate it was alleged he had given appellee a legal option to purchase contained in a lease of the premises.

The complaint alleged that defendant was, and is, the owner of the property; that on May 2, 1939, plaintiff and defendant entered into a written agreement whereby the defendant leased the premises to plaintiff for a term of six years with an option of extending the term for an additional period of five years; that the lease contained a clause giving plaintiff the option of purchasing the demised premises for $10,000 at any time during the term of the lease; that plaintiff exercised its option to extend the term

of the lease, and on December 26, 1946, by written notice, a copy of which was attached to the complaint marked Exhibit "C," exercised its option to purchase the property for $10,000; that plaintiff had been, and still is, ready, willing and able to perform on its part the contract arising out of 'its exercise of the option, but that defendant refused, and continues to refuse, to convey the premises. There was attached to the complaint, as Exhibit "A," a photostatic copy of the lease, the first paragraph of which was as follows:

"This lease and agreement is made in duplicate by E. F. Viering and Hazel O. Viering (his wife) who may be addressed at 304 Second Ave., Rock Falls, Illinois, herein referred to (whether one or more) in the masculine singular as Lessor, jointly and severally with Cities Service Oil Company, a Delawar Corporation, which may be addressed at its Division Office at 3200 So. Western Ave., Chicago, Illinois, herein call Lessee, in consideration of the mutual covenants hereof, upon the following terms and conditions, to-wit:"

The lease, as appears from this exhibit, was signed by defendant, but not signed by his wife. The prayer of the complaint, as by leave of court amended, asked that defendant be ordered to specifically perform the contract by executing and delivering to the plaintiff a warranty deed conveying the premises and delivering to plaintiff an abstract of title showing merchantable title in defendant.

Defendant answered denying he leased the premises for a term of six years with an option to extend the lease for a term of five years and denying that he granted plaintiff an option to purchase the premises for $10,000. He admitted his ownership of the leased premises and admitted that he signed the lease, but stated that when he did so the words "and Hazel O. Viering (his wife)" were not then crossed out. He further stated that Hazel O. Viering was then his wife and then had, and still has, a contingent right of dower in the premises; that after he had signed the lease in which his wife was named as one

of the lessors, his wife's name was, without his consent, crossed out of the lease; and that when plaintiff crossed out of the lease the word "and Hazel O. Viering (his wife)" it knew that Hazel O. Viering was his wife, knew that she refused to sign the lease, knew that she was a party thereto and knew that she would not sign the deed, and that by reason thereof the said lease was not a valid and enforceable agreement between plaintiff and defendant. The answer avers that the lease is void for uncertainty, that it is void because it is incomplete and shows on its face there were other parts to said alleged agreement which are not made a part thereof, that it is void and unenforceable as to the purported option to purchase for the reason that there is no consideration for the option, and that the lease contains two purported options to purchase, both of which are void because contradictory and conflicting and are fraudulent in that defendant did not understand that he was thereby prevented from selling the property for more than $10,000. The answer further alleges that plaintiff has never tendered payment of the sum of $10,000, and therefore has failed to comply with the requirements of the purported option giving him the right to purchase the premises for $10,000, that plaintiff has waived and lost its option to purchase by *laches* and delay, and that defendant on January 4, 1947, by written notice, a copy of which was attached to the answer, marked defendant's Exhibit "1," terminated the option to purchase for $10,000.

Plaintiff filed a reply admitting the receipt of defendant's Exhibit "1," but denying all other allegations of the answer, and averring that between the time plaintiff elected to exercise the option to purchase and the time of filing the instant suit there were continuing negotiations between the parties concerning the exercise of the option and the conveyance of the property.

After the filing of the reply, the defendant thereupon, without obtaining permission of the court, filed a further

pleading, designated as the reply of defendant to the reply of the plaintiff to defendant's answer. By this pleading he admitted the negotiations between the parties, but averred that the same are immaterial and that no settlement was accomplished thereby.

After a hearing before the chancellor, a decree was entered, ordering defendant to execute and deliver to the plaintiff a warranty deed, conveying the premises to the plaintiff, and also to deliver to plaintiff an abstract showing the title to the premises to be merchantable in the defendant, and further directing that plaintiff pay the defendant $10,000 therefor. Defendant prosecutes a direct appeal, a freehold being necessarily involved.

It is appellant's contention (a) that plaintiff by the alteration of the lease waived the option to purchase contained therein; (b) that there was no consideration for said option; (c) that the option is too ambiguous to be specifically enforced; (c) that it is inequitable and contrary to the plain language of the option to require defendant to execute and deliver a warranty deed which his wife refuses to sign and is not obligated to sign; (d) that plaintiff is barred by *laches* from suing for specific performance; (e) that the decree should require plaintiff to pay the rent specified in the lease to the date of delivery of deed and payment of $10,000; and, (f) that the decree in ordering defendant to deliver an abstract showing merchantable title in him requires him to do something which he cannot do and which plaintiff knew that he could not do when the contract was signed and the requirement for the defendant's wife to join in the lease was deleted.

It appears from the pleadings, stipulations and evidence that it was originally contemplated by both plaintiff and defendant that defendant's wife, Hazel O. Viering, should join as a lessor in the execution of the lease; that the lease was prepared in duplicate, both copies setting out her name in the body of the instrument as one of the parties thereto,

and that in such condition the two copies were signed and acknowledged by the defendant; that his wife, Hazel O. Viering, refused to sign the lease; that defendant delivered to the plaintiff the two duplicate leases, signed and acknowledged by him and with the name of his wife undeleted from the instrument as one of the parties thereto; that when the two duplicate leases were so delivered, plaintiff knew that defendant's wife would not sign the lease and therefore could not be compelled to sign a deed to the premises if plaintiff should elect to purchase the same under the option clause contained in the lease; and that plaintiff thereupon struck out of the lease the words "and Hazel O. Viering (his wife)" and after signing the instrument returned one copy thereof, so deleted and signed by it to defendant, and retained the other copy.

The lease, at the time of its delivery to plaintiff by defendant and at the time a copy thereof was returned to him by the plaintiff, contained as paragraph 9, under the heading in capital letters "OPTION TO PURCHASE" the following provision:

"Lessee shall have the option of purchasing the demised premises at any time during the term of this lease for the sum of Ten Thousand and no/100 dollars. Lessee shall also have the option of purchasing the demised premises at any time during the term of this lease at such price and terms which Lessor, as often as he is desirous of selling, may obtain from a bona fide purchaser ready, able and willing to buy, said option to be exercised within fifteen days after written notice to Lessee of the terms of such sale so available and desired, and the prospective purchaser. Exercise of any such option shall create a contract of sale; and Lessor shall promptly furnish to Lessee abstract of title certified to the then date, showing to the satisfaction of Lessee's counsel merchantable title in Lessor; or at Lessee's option, if available, title guaranty policy to the amount of the purchase price, and shall make appropriate conveyance by deed, with joinder of spouse, if any, and with usual covenants of warranty."

This paragraph was never, at any time, stricken from the lease either by defendant or plaintiff. Defendant con-

tends, however, that it was rendered inoperative by his delivery to plaintiff of the lease signed only by himself, with his wife's name therein as one of the parties, and at the same time informing plaintiff that his wife would not sign. He also contends that plaintiff's action in thereafter crossing the wife's name out of the contract had the legal effect of canceling therefrom the option to purchase. This presents for determination the effect of the words "and Hazel O. Viering (his wife)" appearing in the body of the lease when signed and delivered by the defendant and the effect of plaintiff's action in striking said words from the lease.

We have held that if one of the grantors named in a deed or other instrument, after signing and acknowledging the same, delivers the possession thereof to the grantee for the sole purpose of obtaining the signature of the other grantors, this is not such a delivery of the instrument as would give it any validity as the deed or contract of the party who has signed and acknowledged. (*Logue* v. *Von Almen,* 379 Ill. 208; *Ryan* v. *Cooke,* 172 Ill. 302; *Stanley* v. *White,* 160 Ill. 605.) Delivery of a written contract is necessary to give it binding effect, and delivery is a matter of intent. *Logue* v. *Von Almen,* 379 Ill. 208; *Ryan* v. *Cooke,* 172 Ill. 302; *Jordan* v. *Davis,* 108 Ill. 336.

In the case of *Heckmann* v. *Detlaff,* 283 Ill. 505, it was held that a warranty deed, stating in the body thereof that it was made by a husband and wife, but which was signed and acknowledged only by the husband, is, as to property of the husband other than his homestead estate, valid and binding upon the husband, and that the fact, alone, that the names of both husband and wife are in the body of the deed does not show it was not intended to be binding on the husband unless executed by both grantors.

The record does not disclose, and defendant does not claim, that he delivered the lease to plaintiff with any instruction or direction that the purchase option provisions

contained therein were to be inoperative, or that he gave any notice at the time that said option was to be considered as eliminated from the lease, or that there was any understanding between them to that effect. There is nothing contained in the lease and no language therein indicating that the option to purchase was not intended to be binding on the defendant because not signed by the wife. The statement at the beginning of the lease, *viz.*, "This lease and agreement is made in duplicate by E. F. Viering and Hazel O. Viering (his wife) who may be addressed at 304 Second Ave., Rock Falls, Illinois, herein referred to (whether one or more) in the masculine singular as Lessor, jointly and severally" shows upon its face that whether executed by the husband alone, or by both the husband and wife, the instrument and all the provisions thereof would be binding upon him as his several and separate contract.

It is true that without the signature of defendant's wife to the lease, plaintiff could not be assured of undisturbed title and possession, either as defendant's lessee under the terms and provisions of the lease or as his vendee under the terms and provisions of the option to purchase contained in the lease. However, there is nothing appearing either in the face of the written instrument signed by plaintiff and defendant or in their actions and conduct at the time the same was executed indicating that because Mrs. Viering refused to sign and become bound by the lease and the terms and provisions contained therein, including the option to purchase, they as parties to said instrument intended the same, or any of its terms and provisions, to be inoperative and void.

If, then, under the decisions of this court and the matters appearing of record in this case, the lease and all the provisions contained, including the option to purchase, would be defendant's contract and binding upon him as such, regardless of whether his wife's name was or was not deleted therefrom at the time he signed and returned the

same to plaintiff, it logically follows that plaintiff's action in striking out the wife's name could have no effect whatever upon the contract or upon the rights, obligations, interests or relations of the plaintiff and defendant as the parties thereto. We have held that where a written executory contract has, by one of the parties thereto without the consent of the other, been altered from its condition when signed and delivered, such alteration, if material,—that is, if it so changes its terms as to give it a different legal effect from what it originally had,—renders the instrument void and destroys it as a basis of recovery, either in its altered form or in its original condition, by the party making the alteration. (*Hayes* v. *Wagner,* 220 Ill. 256.) This rule of law is recognized and enforced in suits in equity (*Ruwaldt* v. *McBride, Inc.,* 388 Ill. 285; *Wagner* v. *McClay,* 306 Ill. 560,) and in actions at law. (*Hayes* v. *Wagner,* 220 Ill. 256.) But it is clear that the alteration of a written instrument, by the elimination of words which had no effect at the time the contract was signed and delivered, could not be an alteration changing the legal effect of the instrument.

This brings us, then, to the question whether specific performance may be had against an owner of real estate upon a contract, such as the one in this case, not signed by the owner's wife, but by the terms of which he agrees to convey by warranty deed, with joinder of spouse. It is well settled that a court cannot compel a wife to release or convey her inchoate right of dower in lands which her husband has contracted to convey by warranty deed with his wife joining therein, but to which contract she is not a party, and that although this fact does not prevent specific performance of the contract as against the husband, notwithstanding he cannot completely perform without his wife joining with him in the deed, the court will not, in decreeing performance, require him to convey by deed signed by his wife.

Where the husband contracts to convey a merchantable title by warranty deed or where he contracts to convey a title free of incumbrance, although his contract does not provide that the deed shall be signed by his wife, he does not, if he has a wife who has an inchoate right of dower in the premises, completely perform his contract by tendering his warranty deed not signed by her, and therefore he cannot, because of his own failure to perform, compel the purchaser to accept the deed. (*Rost* v. *Kremin,* 308 Ill. 79.) This court has never regarded such a title as merchantable, and has never, at any time or in any case, required a purchaser to accept such a title and rely on the covenants of warranty. (*Firebaugh* v. *Wittenberg,* 309 Ill. 536, 546.) It is well established that the vendor cannot force the purchaser to pay his money and receive a defective title. (*Lancaster* v. *Roberts,* 144 Ill. 213, 224.) However, in specific performance cases where the contract cannot be completely performed because of the vendor's inability to convey the full title, there is a well-recognized distinction between actions brought by the vendor and those brought by the vendee. And, although specific performance cannot be had against a vendor who has no title to transfer, since a court of equity will not render a nugatory decree, (*Harris* v. *Nelson,* 331 Ill. 225; *Morris* v. *Curtin,* 321 Ill. 462,) if the vendor has any title to the property he has contracted to convey, the vendee, at his option, may enforce the contract with respect to whatever interest the vendor possesses, the vendor not being permitted to defend on the ground that his title is not so complete as the one he agreed to convey; but the vendee will not be compelled to accept anything less than the full title for which he has contracted, even with abatement of the purchase price. 49 Am. Jur., Specific Performance, sec. 102.

The crucial question presented is as to whether plaintiff, as purchaser, under the terms of the option agreement, has the right to insist upon a specific performance of the con-

tract by receiving a deed conveying the title which defendant has, with such covenants as he has agreed to make; or, stated differently, whether because the title which defendant is able to convey is not as complete as the title which he agreed to deliver, he is therefore to be excused from conveying the title which he has with the covenants which he agreed to make.

This court, in *Harding* v. *Parshall,* 56 Ill. 219, held that the vendees in a contract for the sale and purchase of real estate had the right by specific performance to compel the vendors to deliver a deed with the covenants of warranty which they had agreed to make, notwithstanding the vendors' title, in view of the character of such covenants, was defective. The court, on page 227, stated and disposed of the question as follows: "We now come to the consideration of the question, whether Parshall [the purchaser and plaintiff] has the right to insist upon a specific performance of the contract by receiving such title as appellant and Paullin [the vendors and defendants] have, with covenants which they agreed to make for title. Can they now insist that because they do not have such title as they agreed to sell that they are exonorated from the performance of their contract, and that Parshall shall only have a restoration of his money? It is clear beyond question that appellant and Paullin could not compel Parshall to perform the contract unless they could show that they were able to convey such a title as they had contracted to give. But in this case he is willing to risk their title and receive it as they hold it, with the covenants they agreed to make. That such is the rule of law seems to be apparent. Otherwise a party would have the right to insist on a rescission simply because he was unable to perform his agreement."

The question has never been directly presented to this court as to the nature of the deed, whether warranty or quitclaim, which an owner of real estate should be com-

pelled to give when he has, by contract not joined in by his wife, agreed to convey by warranty deed signed by himself and his wife; but this court in many cases when adjudicating the rights of the vendor and vendee under such contracts has stated that the purchaser, when seeking specific performance of the contract, must accept the deed of the vendor without deduction from the purchase price and rely upon the covenant of warranty to protect him against the inchoate right of dower. (*Pearson* v. *Adams,* 394 Ill. 391; *Rost* v. *Kremin,* 308 Ill. 79; *Bartak* v. *Isvolt,* 261 Ill. 279; *Clark* v. *Jankowski,* 255 Ill. 129; *Ebert* v. *Arends,* 190 Ill. 221; *Humphrey* v. *Clement,* 44 Ill. 299.) The most recent case is that of *Pearson* v. *Adams,* 394 Ill. 391, wherein this court, on page 396 of the opinion, stated "that where a vendor has covenanted to convey by warranty deed with his wife joining therein, but she was not a party to the contract and declines to sign the deed, a court of .equity will require the vendor to convey by warranty deed all the interest he can release, leaving the purchaser the right to proceed against the vendor for damages for a breach of his covenants."

In the case of *Ebert* v. *Arends,* 190 Ill. 221, where the vendor in a contract of sale not signed by his wife agreed to convey to the purchaser in fee simple clear of all encumbrance by a good and sufficient warranty deed a certain eighty acres of land owned by the vendor, this court, on page 234 of the opinion, stated: "The vendee, in cases like the one at bar, must take his deed without the execution thereof by the wife, and rely upon its covenants. If a purchaser of land desires to protect himself against the dower of the vendor's wife, he should provide against it in his contract." This language was quoted with approval in the *Bartak* and *Rost cases* above cited.

It will be observed the above cases hold that where the vendee elects to take a conveyance from the husband alone without asking for a deduction from the purchase price,

the purchaser is entitled to a conveyance from the husband by warranty deed. It is not impossible or unlawful for a married man to convey by warranty deed, in which he is sole grantor, such title as he has in any real estate, whether his title be in fee or that of a lesser interest. The reasoning in all of the opinions in the above-cited cases is based upon the rule that where a vendor is not able to convey the title which he agreed to furnish, his vendee may, if he so elects, compel performance by the vendor to the extent which it is possible for the vendor to perform, but without allowing to the vendee any deduction from the purchase price as compensation for deficiencies in title, the value of which, as in the case of inchoate dower, there is no just and accurate basis for ascertaining. The thought of this court running through these opinions, as expressed therein, is that the vendee, if he elects to pay the full amount of the purchase price, may compel a conveyance by warranty deed from the vendor alone.

The practice of the early English equity courts was to decree specific performance by the husband of contracts made by him affecting land in which his wife had a dower ·right, and in case the wife refused to join in the conveyance, imprison the husband until she agreed to release her dower, but dissatisfaction with this rule arising, it was abandoned and the rule adopted that equity will not compel a husband to procure his wife's consent and signature to a deed releasing her dower if she declines to execute it, even where the husband had specifically agreed to procure his wife to join and release her dower. (46 A.L.R. 748.) The English courts distinguish between those cases where the vendee knew at the time of making the contract that the vendor was married and those cases where he did not have such notice or knowledge, and in the former case will not allow the vendee an abatement from the purchase price of the value of the wife's inchoate dower. (46 A.L.R. 770.) However, as the courts of this State do not allow

a vendee any abatement in the purchase price as compensation for inchoate dower, the vendee's knowledge or lack of knowledge of the vendor's marital status at the time of entering into the contract is of no importance.

Defendant also insists there was no consideration for the option to purchase. A provision in a lease conferring upon the tenant an option to purchase the demised premises is an integral part of the lease and it is not obnoxious to the objection that there is a want of mutuality, for the agreement to pay rent is, alone, sufficient consideration to support the option as well as the right of occupancy under the lease, and to bind the lessor, irrespective of the lessee's lack of obligation to purchase. *County of Hamilton* v. *Sloan,* 387 Ill. 24; *Garlick* v. *Imgruet,* 340 Ill. 136.

Defendant contends that the provisions of the option to purchase are too ambiguous to be specifically enforced. The paragraph of the lease entitled "Option to purchase" refutes, in itself, these claims of ambiguity. The words "any such option" clearly mean either the first or the second option, and that the exercise of either option would create a contract of sale, imposing upon the lessor the duties enumerated of furnishing abstract of title or title guaranty policy and conveying by warranty deed. The plain common-sense meaning of the paragraph,—and that is the meaning which should prevail, (*Welsh* v. *Jakstas,* 401 Ill. 288,)—is that the lessee at any time during the term of the lease, and also at any time during the lease, shall have the option to purchase at the price and terms offered by a *bona fide* purchaser in case the lessor desired to sell.

Defendant next asserts that it is unjust and inequitable to require him to execute and deliver a warranty deed which his wife refuses to sign and is not obligated to sign and upon the covenants of which his estate, in the event of his death, would be liable to the extent of her dower. He argues that it is quite evident the leased property has increased in value since the lease was made in 1939, and

that it is quite probable that the property may become worth considerably more than $10,000, and that its value might be so increased that at his death the value of his wife's dower would equal or exceed the sum of $10,000.

While a contract for the sale of real estate will not be specifically enforced when it would be unjust and inequitable to do so, yet there is no injustice or oppression in compelling the seller to do what he agreed to do when he thought it was to his advantage. (*Smith* v. *Farmers' State Bank,* 390 Ill. 374.) The fact that the value of the property has increased materially does not warrant a refusal to carry out its terms. (*In re Estate of Frayser,* 401 Ill. 364; *Forest Preserve Dist.* v. *Emerson,* 341 Ill. 442.) Where a contract is made for a consideration and without fraud and entered into fairly and understandingly between parties who are competent to contract, a court of equity will enforce it as a matter of right. (*In re Estate of Frayser,* 401 Ill. 364; *Smith* v. *Farmers' State Bank,* 390 Ill. 374; *Forest Preserve Dist* v. *Emerson,* 341 Ill. 442.) The courts can have no concern with the wisdom or folly of such a contract. (*In re Estate of Frayser,* 401 Ill. 364; *Stipanowich* v. *Sleeth,* 349 Ill. 98.) It is the general rule that inadequacy of consideration, exorbitance of price or improvidence in a contract will not, in the absence of fraud, constitute a defense to a suit for specific performance. (*Stipanowich* v. *Sleeth,* 349 Ill. 98.) Here, the record shows that the contract was entered into fairly and understandingly. There are no facts or circumstances indicating any fraud or bad faith on the part of plaintiff. Defendant was competent to contract, and it is not inequitable or unjust to require him to do what he agreed to do, even though the property may have increased in value.

Defendant also contends that plaintiff was guilty of *laches* in bringing suit for specific performance, and the delay is invoked as a bar to its maintenance. December

28, 1946, plaintiff notified defendant that it had elected to exercise its option to purchase. January 4, 1947, defendant served notice on plaintiff that he refused to recognize the existence of the option, but that, in the event the option was in force and effect, he was thereby terminating the same. This suit was filed August 17, 1948, but it appears, from the admissions in defendant's pleadings and the testimony of his attorney, that negotiations as to a settlement of the controversy concerning the exercise of the option and the conveyance of the property were going on from January, 1947, until and including the month of July, 1948. There is nothing in the record suggesting that the delay in bringing suit operated to the prejudice of the defendant, or that there was by reason of the delay any change in the situation of the parties which makes it inequitable to require defendant to perform the contract. It is only when the delay is attended by circumstances rendering it inequitable to grant relief that *laches* may be successfully invoked. (*Voris* v. *McIver,* 339 Ill. 340.) This is not such a case.

Defendant objects to the decree because it does not require from plaintiff payment of the rent specified in the lease until the date of the delivery of the deed and the payment of the $10,000. Where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase which the lessee exercises, he is no longer in possession as a tenant, but his possession is that of a vendee. (*Bakaitis* v. *Fink,* 340 Ill. 440; 51 C.J.S., Landlord and Tenant, sec. 82a.) The lessor is not entitled to rent after the option to purchase is exercised unless there is in the lease an express stipulation therefor. (51 C.J.S., Landlord and Tenant, sec. 82a.) The exercise of the option extinguishes the lease and terminates the relation of landlord and tenant. The lease and all its incidents, express and implied, are blotted out of existence, and the relation of vendor and vendee created. (32 Am.

Jur., Landlord and Tenant, sec. 300.) Although pending the making of a contract for the sale of real estate the prospective purchaser cannot in any sense, either at law or in equity, be considered as the owner of the land, the general proposition which does not admit of controversy is that when the making of the contract is complete, thereafter the land is regarded in equity as the property of the vendee, subject to the rights of the vendor under the contract of purchase. (*Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477.) It follows that, when the plaintiff in this case exercised its option to purchase by notice in writing served on the defendant, a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the premises in the plaintiff. After that time the relation of landlord and tenant ceased to exist, and the rights of the parties must be determined upon the basis of a contract to sell and convey on one side and to purchase on the other.

Defendant also complains that the decree in requiring him to deliver an abstract showing merchantable title in him directs him to do something which it is impossible for him to do and which, because of his wife's refusal to sign the lease, plaintiff knew to be impossible when the lease was signed. We agree with defendant that the decree is erroneous in this respect. It should only have required of him the delivery of an abstract showing mechantable title in him subject to his wife's inchoate dower. In this connection defendant also complains of the provision in the lease requiring the abstract to show mechantable title in him to the satisfaction of lessee's counsel, which he says might require the expenditure of a large amount of money to suit the whim of counsel. There is no real basis for any such apprehension. The plain common-sense meaning of this, as well as all other provisions of the option, is

the meaning which prevails. (*Welsh* v. *Jakstas*, 401 Ill. 288.) To construe a provision requiring title satisfactory to lessee's counsel as a title subject to arbitrary and unreasonable demands on the part of such counsel would be a departure from the plain common-sense meaning of the language used.

The defendant below, appellant here, has inserted in the transcript of the record a certified copy of a complaint filed by him in an action at law against the plaintiff on May 31, 1949, in which he seeks to cancel the lease for nonpayment of rent alleged to have become due under the lease since the decree in the case at bar was entered. Appellee has filed in this court its motion to strike the same from the record, and the motion was taken with the case. It is clear that the complaint in this subsequent action at law is no part of the record in the instant case and cannot be made a part thereof by the fact that a certified copy of the same was placed in the files of the trial court and by the clerk incorporated in the transcript of the record. The complaint in this action at law amounts to no more than an *ex parte* affidavit of appellant that no rent under the lease has been paid by appellee since the specific performance decree was entered and that appellant had served notice on appellee of cancellation of the lease for nonpayment of rent; and even if it were proper to be considered by this court, which it is not, it could have no bearing on the issues before this court for determination. As hereinabove pointed out, appellant was not entitled to rent after the option to purchase was exercised. A lessor may not, by a breach of a covenant to convey, compel the continuance of the relation of landlord and tenant for the purpose of creating a breach of covenant to pay rent so as to enable him to declare the option forfeited. (51 C.J.S., Landlord and Tenant, sec. 82a.) The motion to strike is allowed.

We have carefully examined this record and are of the opinion specific performance should be allowed. The decree, however, to the extent that it requires from defendant the delivery of an abstract showing merchantable title in him, without providing that such title may be subject to his wife's dower, is reversed. In all other respects it is affirmed, and the cause remanded to the circuit court of Whiteside County, with directions to modify the decree so as to hold and direct that defendant deliver an abstract showing mechantable title in him, subject only to his wife's inchoate dower.

*Affirmed in part and reversed in part and remanded, with directions.*