VIRGIL L. COLE, Plaintiff-Appellant, *v.* JOHN IGNATIUS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 81—595

Opinion filed March 30, 1983.—Rehearing denied May 6, 1983.

Michael B. Mann, of Giachini, Murphy & Mann, of Maywood, for appellant.

Alan C. Hoffman, of Alan C. Hoffman & Associates, of River Grove, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Virgil L. Cole, brought an action for specific performance of the contract formed when he exercised an option to purchase property owned by defendants, John Ignatius and his wife, Mildred. Plaintiff alleged that defendants had leased the property involved to CSC Incorporated and that CSC had assigned the lease to him. Plaintiff further alleged that the lease contained an option to renew as well as an option to buy and that he had exercised both options. Plaintiff also alleged that he was ready, willing and able to perform all of the conditions under the contract formed when he exercised the option to buy. In their answer, defendants alleged as affirmative defenses that plaintiff was guilty of fraud and that plaintiff's exercise of the option to buy was untimely because it occurred after CSC had exercised the option to renew. Prior to trial, CSC and Brush Pottery, Incorporated, a division of CSC acquired by plaintiff, were made third-party defendants. Joseph Witry, who subleased the premises from plaintiff, was allowed to intervene as a plaintiff. A trial was held, and at the conclu-

sion of the testimony, defendants sought to have a forfeiture of the lease declared because various provisions of the lease had been breached. The trial court found that plaintiff was in default of the lease and declared plaintiff to be a tenant at sufferance. We reverse and remand with directions.

Defendants leased a warehouse-type building located in Palatine, Illinois, to CSC for a five-year term commencing on May 1, 1975, and terminating on April 30, 1980. The lease contained both an option to renew and an option to buy. Plaintiff testified that he had been an employee of CSC from January 15, 1975, until November 30, 1979. On December 1, 1979, he acquired Brush Pottery from CSC, and that same day, CSC assigned him the lease involved here. Subsequently, defendants received a letter dated December 21, 1979, which informed them that the option to renew the lease was being exercised pursuant to the lease. The letter was signed by plaintiff and by an executive vice-president of CSC.

According to plaintiff, defendants learned of the lease assignment in January 1980. Plaintiff testified that he had a telephone conversation with defendant John Ignatius on January 7 in which Ignatius acknowledged that he had received plaintiff's rent check through Brush Pottery and stated that he would appreciate dealing with plaintiff because he had previously had problems with CSC. Plaintiff also testified that he spoke with Ignatius regarding a sublet of part of the building to Meadow Auto Body Shop in late February. A letter regarding this conversation was sent to Ignatius on February 25, and Ignatius testified that he was aware of this sublease. Plaintiff further testified that he spoke with Ignatius on or about May 2, 1980, regarding the option to purchase. According to plaintiff, he told Ignatius that he wanted to move his business to Ohio, and he therefore wanted to exercise the option so that he could sublease the building. Plaintiff stated that while Ignatius voiced his concern regarding the tax consequences of the sale and also questioned whether the option to purchase could be exercised since the option to renew had already been exercised, he told plaintiff to go ahead and mail a notice that the option to buy was being exercised in accordance with the lease. Plaintiff sent the notice on May 13 by certified mail, return receipt requested, as required by the lease, but because he did not receive a receipt, he sent a copy of the letter on May 28. Along with the notices, plaintiff sent a copy of CSC's assignment of the lease to him.

Meanwhile, plaintiff testified, he had spoken with Joseph Witry on or about April 5, 1980, about leasing or purchasing the building. As a result, plaintiff and Witry entered into a lease agreement for the en-

tire building which included an option to buy for $360,000. Witry occupied the premises on May 16. Plaintiff testified that he did not give Witry permission to remodel the interior of the building. Finally, plaintiff testified that he had not received any notice from defendants regarding defects or defaults under the lease until after he had exercised the option to buy.

Defendant John Ignatius testified that he had no correspondence with plaintiff or CSC between January 1980 and May 1980, although he did testify that on January 19, 1980, he received the letter in which the option to renew was exercised. This defendant also testified that he received the notices of plaintiff's exercise of the option to buy. He denied that plaintiff told him he wanted to exercise the option, or that he encouraged plaintiff to do so.

Ignatius further testified that Witry took possession of the premises without his knowledge. He learned of Witry's presence during an inspection he made of the building in June 1980. Following this inspection, he sent a letter to the president of CSC informing him that if the grounds and driveway were not brought into compliance with the lease, he would have the work done and then bill CSC for it. Ignatius sent plaintiff a copy of the letter because he did not know "who was actually in possession of the lease." A similar letter regarding other violations was sent to CSC and plaintiff on September 12. Ignatius stated that as of September 1980, none of the violations of which he had complained had been rectified.

Following the conclusion of the testimony at trial, defendants sought to have a forfeiture declared because various provisions of the lease relating to insurance had been breached, and because Witry had altered the premises without defendants' prior consent as required by the lease.

The trial court found that CSC's assignment of the lease to plaintiff was valid, and therefore, CSC had no right, title or interest upon which to exercise the option to renew. The court further found that plaintiff was in default of the covenants of the lease, and under the terms of the lease, a lessee could not exercise the option to renew or the option to buy if he was in default. Thus, the court found, plaintiff failed to effectively exercise either of these options. Finally, the court found that plaintiff was not a holdover tenant but was a tenant at sufferance. Witry, consequently, was a subtenant at sufferance. CSC and Brush Pottery were found to have no claim to the property. The court dismissed plaintiff's complaint, ordered defendants' title quieted as to claims by plaintiff, Witry, CSC and Brush Pottery, ordered Witry to restore the property to its original condition and ordered plaintiff to

change the insurance policies he held on the premises to reflect ownership in defendants.

■ Since the parties agree that the lease in question was valid when executed by CSC and defendants, the first question we must address is the validity of CSC's assignment of the lease to plaintiff. Defendants admit that there is no provision in the lease prohibiting its assignment or requiring their prior approval of an assignment. In fact, language in the lease requiring prior written consent of lessors to an assignment has been lined out. In the absence of an express restriction in a lease prohibiting an assignment, the lease may be assigned. (*Keogh v. Peck* (1925), 316 Ill. 318, 328, 147 N.E. 266, 270.) Therefore, CSC had the right to assign its right, title and interest in the lease to plaintiff without first obtaining defendants' consent. We conclude that the December 1, 1979, assignment of the lease from CSC to plaintiff was valid.

■ In concluding that the assignment was valid, we reject defendants' argument that the assignment "was as a matter of law, at best, a nullity or, at worst, a fraud upon [defendants] and consequently not binding on [defendants]." In this regard, defendants argue that plaintiff failed to inform them of the assignment prior to May and failed to record the assignment. These arguments lack merit. The lease does not provide for notice of an assignment within a certain time or in any particular manner. We believe that the evidence shows that even though defendants did not receive written notice of the assignment until May, they were made aware of it prior to that time. In January 1980, defendants began receiving rent checks from plaintiff through Brush Pottery. In February, defendant John Ignatius learned that plaintiff was subleasing a portion of the premises. Ignatius also testified that he spoke to plaintiff regarding insurance rates for the building in February. In addition, plaintiff testified to conversations he had with defendant John Ignatius relating to the assignment at least as early as January. Although Ignatius denied that these conversations took place, the trial court presumably resolved the question of credibility in favor of plaintiff since it decided that the assignment was valid, and we see no reason to disturb this determination. Therefore, we must reject defendants' argument that the assignment was not valid because it was made in secrecy and defendants were not given notice of it.

As for plaintiff's failure to record the assignment, while the lease provides that an assignment may be recorded, it does not provide that an assignment must be recorded. In the absence of such a requirement, plaintiff's failure to record the assignment did not render it in-

valid.

■ In further support of their argument that the assignment was either a nullity or a fraud, defendants contend that CSC validly exercised the option to renew, and this had the effect of invalidating its prior assignment of the lease. Contrary to defendants' assertion, however, it was CSC's exercise of the renewal option which was invalid, not its assignment of the lease to plaintiff. Since CSC had validly assigned the lease on December 1, 1979, it no longer had any right, title or interest in the lease on December 21, 1979, when it purportedly exercised the option to renew, and therefore it could not have validly exercised that option. Defendants' argument that the conduct of CSC and plaintiff was so inconsistent with an assignment as to imply that they had rescinded the assignment is not supported by the record.

Having decided that CSC did not validly exercise the option to renew, we must next determine whether that option was validly exercised by plaintiff. The December 21, 1979, letter purporting to exercise the option to renew reads as follows:

> "[T]he undersigned is hereby electing to exercise its option to renew the lease ***.
>
> Yours truly,
>
> CSC, Incorporated
>
> By: [Signature]
> Executive Vice President

By: [Signature]
Virgil L. Cole."

■ We do not believe that this letter constituted a valid exercise by plaintiff of the option to renew. The statement in the letter that the undersigned was exercising *its* option clearly did not refer to plaintiff. The letter is ostensibly signed by CSC, and the fact that plaintiff's signature appears following the word "By" suggests that plaintiff was signing on behalf of the corporation and not on his own behalf. Plaintiff's explanation for the presence of both his signature and that of the executive vice-president is that he had not yet had an opportunity to inform defendants of the assignment. This explanation is clearly untenable. Since the December 21 letter represents the only attempt made by plaintiff to exercise the option to renew, we conclude that plaintiff never validly exercised that option.

Next, we must determine whether plaintiff's exercise of the option to buy was valid. The provisions in the lease relating to this option state:

> "16. As part of the consideration of this Lease, Lessee is

hereby granted the right and option to purchase the demised premises *** together with the improvements thereon for a purchase price of $240,000.00 ***. Such option may be exercised by Lessee at any time during a sixty (60) day period commencing on a date thirty (30) days before termination or expiration (regardless of whether for breach by Lessee, lapse of time or otherwise) of the term of this Lease and ending on a date thirty (30) days after such termination, it being agreed that this option shall survive any such termination or expiration and shall expire only if not exercised by Lessee within such sixty (60), day period. ***

For purposes of permitting Lessee to exercise this option, it is understood and agreed that, notwithstanding the printed provisions of this Lease, Lessee's obligation to yield up possession upon termination shall be postponed for a period of thirty (30) days from and after any termination or expiration (for any reason as aforesaid) of the term hereof.

22. In reference to Paragraph 16, the notice to exercise the option to purchase shall be given by certified mail, return receipt requested, to the Lessor by the Lessee if the Lessee exercises said option."

The letter in which plaintiff exercised the option to buy was mailed by plaintiff on May 13, 1980, by certified mail, return receipt requested. Although plaintiff never received the receipt, defendant John Ignatius testified that he received the letter on May 16. Plaintiff subsequently sent a copy of the letter, also by certified mail, return receipt requested. The receipt shows that defendants received this letter on May 31. We believe that defendants received appropriate notice as required under the lease, and defendants do not argue to the contrary.

Defendants do argue, however, that plaintiff's exercise of the option to buy was invalid because the provisions allowing the option to be exercised within 30 days after the expiration of the lease was invalid for lack of mutuality. According to defendants, "During that period the lessor obviously could neither lease out the premises nor sell it to a third party, while the ex-lessee could in his sole discretion exercise or not exercise the option to purchase." This contention lacks merit. It is not necessary that a contract be reciprocal in every separate obligation, and it is sufficient if it legally obligates both parties to abide by and perform its conditions. (*Cox v. Grant* (1978), 57 Ill. App. 3d 922, 925, 373 N.E.2d 820, 822.) Where an option to buy is an integral part of the lease, it is not subject to the objection that there is

want of mutuality, for the agreement to pay rent or do other acts will support the option as well as the right to occupy under the lease, and binds the lessor notwithstanding the lessee is not bound to purchase. (*Garlick v. Imgruet* (1930), 340 Ill. 136, 146, 172 N.E. 164, 168; *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 552, 89 N.E.2d 392, 401.) We see no reason why these principles are any less applicable where, under the express terms of the lease, the lessee is permitted to exercise the option to buy within a limited period after the lease expires or otherwise terminates. The lease here specifically provides that the option to buy is part of the consideration for the lease and that the option shall survive the expiration or termination of the lease for the time specified. The parties were aware of the consequences of allowing plaintiff to exercise the option during the 30-day post-lease period, for the lease expressly provides that the lessee's obligation to vacate the premises upon termination or expiration of the lease is postponed for the 30-day period. Where parties competent to contract enter into a contract fairly and understandingly, and the contract is made for a consideration and without fraud, courts will not concern themselves with the wisdom or folly of the contract. (*Keogh v. Peck* (1925), 316 Ill. 318, 324, 147 N.E. 266, 268.) Accordingly, plaintiff's exercise of the option to buy following the termination of the lease cannot be invalidated on the ground that a portion of the option was not supported by consideration.

■ In addition, we do not believe that any breach of the lease on plaintiff's part rendered plaintiff's exercise of the option to buy invalid. While the lease required as a condition of exercising the option to renew or of exercising the option to buy under the renewal lease that the lessee not be in default, absence of default was not a prerequisite to exercising the option to buy under the original lease. In fact, under paragraph 16, the lessee could exercise the option to buy even if the lease was terminated due to a breach of the lease by the lessee. Moreover, defendants did not declare a forfeiture of the lease until the end of the trial, long after plaintiff had exercised the option to buy. Since plaintiff's exercise of the option terminated the lease, defendants lost their right to declare a forfeiture of the lease. As the court in *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 554, 89 N.E.2d 392, 402, stated:

> "Where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase which the lessee exercises, he is no longer in possession as a tenant, but his possession is that of a vendee. [Citations.] *** The exercise of the option extinguishes the lease and termi-

nates the relation of landlord and tenant. \*\*\* [T]he relation of vendor and vendee [is] created."

Therefore, once plaintiff exercised his option to buy, he was no longer obligated to fulfill his obligations under the lease, and he could not thereafter be found in default of the lease.

■ We conclude that plaintiff's exercise of his option to buy was valid in all respects. As assignee of the lease containing the option, plaintiff had the right to exercise the option. The option was exercised in the time and manner required under the lease and was for the requisite amount of $240,000. Plaintiff's exercise of the option extinguished the lease and created a contract for the sale of the property. Plaintiff is entitled to have this contract specifically enforced.

■ In reaching this conclusion, we reject defendant's contention that plaintiff's right to specific performance should be denied on the basis of fraud. Defendants alleged fraud as an affirmative defense in their answer, and in their brief and at oral argument they suggested that plaintiff was guilty of fraud, sharp practices and secrecy. Fraud, however, is never presumed, and facts constituting fraud must be clearly and explicitly alleged. (*Bridge v. Newridge Chemical Co.* (1967), 88 Ill. App. 2d 337, 342, 232 N.E.2d 551, 554.) Proof of each element in an action for fraud must be clear and convincing (*National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 924, 381 N.E.2d 15, 18), and the burden of proving fraud is on the party asserting it. (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 78, 302 N.E.2d 201, 204.) An essential element to be pleaded and proved is that the party was induced by fraud to act to his detriment. (*Macaluso v. Jenkins* (1981), 95 Ill. App. 3d 461, 469, 420 N.E.2d 251, 258; see *Halla v. Chicago Title & Trust Co.* (1952), 412 Ill. 39, 48, 104 N.E.2d 790, 795.) Here, even if we were to find that plaintiff's conduct relating to the assignment and the attempt to exercise the option to renew was fraudulent, defendants' affirmative defense of fraud must fail for they neither alleged nor proved any injury resulting from reliance on plaintiff's actions. The only suggestion of injury is defendant John Ignatius' testimony that as a result of receiving the letter purporting to exercise the option to renew:

> "Well, I based my income with the tax—for tax purposes based on that letter of renewal, and I didn't proceed looking for any other property to replace the income that might have been sold—Well, might have been taken away from me if the building had been—if I had not received this letter."

In the absence of any allegations of injury in defendants' answer and any evidence of injury other than this vague statement by Ignatius,

we must conclude that defendants have failed to adequately plead and prove fraud.

■ While a contract for the sale of real estate will not be specifically enforced when it would be unjust and inequitable to do so, yet there is no injustice or oppression in compelling the seller to do what he agreed to do when he thought it was to his advantage. (*Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 553, 89 N.E.2d 392, 401.) Where, as here, a contract is supported by consideration, made without fraud, and entered into fairly and understandingly between parties who are competent to contract, it should be enforced as a matter of right. See *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 553, 89 N.E.2d 392, 401.

Accordingly, the judgment is reversed, and this case is remanded to the trial court with directions to enter judgment in favor of plaintiff for specific performance of the contract formed when he exercised his option to buy and for any further proceedings consistent therewith.

Reversed and remanded with directions.

McNAMARA, P.J., and WHITE, J., concur.