(No. 79-CC-0871-)

MARGARET TZINBERG, Assignee of the Claim of Gem Super Drugs, Inc., d/b/a Gem Rexall Drugs, Claimant, *v.* THE STATE OF ILLINOIS DEPARTMENT OF PUBLIC AID, Respondent.

*Opinion filed November 3, 1986.*

GOLDENHERSH & GOLDENHERSH, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, and JAMES RADER, of counsel), for Respondent.

HOLDERMAN, J.

This suit involves the claim of Margaret Tzinberg, assignee of the claim of Gem Superdrugs Incorporation, d/b/a Gem Rexall Drugs (GEM) against the State of Illinois Department of Public Aid (IDPA) for payments on prescriptions allegedly furnished to recipients of public aid in conjunction with the Public Aid Medical Plan. GEM alleges that it furnished prescriptions in the amount of $65,359.24 to public aid recipients for which it was never paid. IDPA alleges two defenses—first, that the claims submitted to IDPA for these prescriptions were fraudulent; and second, that GEM was suspended from participation in the public aid program as of July 2, 1974, and that therefore any billings subsequent to that date are not allowable.

The facts of the case show that GEM was owned by a pharmacist by the name of Jack Tzinberg. Tzinberg entered into an agreement with IDPA on January 30, 1969, under the auspices of the Medical Assistance Program of IDPA to provide pharmaceuticals to recipients of public aid. Under the terms of this program, pharmacists who have been approved by the IDPA are entitled to be reimbursed for pharmaceuticals that they dispense to public aid recipients so long as they file a claim for the pharmaceuticals in a manner prescribed by the IDPA. The rules and regulations of the IDPA, as well as the billing procedures, are set out in the manual sent by IDPA to participating pharmacies. The

terms of the agreement between GEM and IDPA provide that the agreement may be terminated by the pharmacy or by IDPA at any time upon written notice.

During the year 1974, Tzinberg was the general manager of GEM. The business was dissolved in 1979, and the only shareholder was Tzinberg's wife, Margaret Tzinberg. By virtue of this status, Margaret Tzinberg acquired her position as assignee of the claim of GEM.

Tzinberg testified that during the year 1974, GEM dispensed pharmaceuticals to public aid recipients for which they were not reimbursed in the amount of $65,359.24. Tzinberg testified these claims were all proper, they were not fraudulent, they were submitted in compliance with proper IDPA procedures, and they were submitted in compliance with procedures that had previously been approved by IDPA. Tzinberg acknowledged, however, that GEM had received a telegram from the director of the Department of Public Aid on July 2, 1974, stating that:

"This telegram will serve as notification that until further notice the Illinois Department of Public Aid is suspending payment to the above named drug store as a result of significant irregularities discovered during the preliminary investigation."

Furthermore, Tzinberg acknowledged the receipt of a letter dated July 22, 1974, which stated:

"This is to notify you that GEM Rexall Pharmacy is suspended from participation in the Department of Public Aid's medical assistance program effective with the date of your receipt of this letter."

Claimant has argued throughout this case that these documents should have no effect. Claimant's position is that the term "suspension" did not give GEM adequate notice that it was terminated from the program. Tzinberg admitted, however, that upon receipt of the telegram he immediately contacted the Illinois Pharma-

ceutical Association to determine whether he should continue filling prescriptions.

The amounts involved in this matter are $43,049.37, which is the amount billed after July 2, 1974, and $22,309.87, which is the amount billed prior to July 2, 1974.

Respondent has raised the issue of fraud as a defense to payment of these bills. It is well established in Illinois that the burden of proving fraud is on the party alleging the fraudulent conduct. *Cole v. Ignatius* (1983), 114 Ill. App. 3d 66, 448 N.E.2d 538.

Respondent produced seven witnesses at the trial in an effort to prove fraud. The witnesses, in the opinion of the Court, did not establish fraud. There is a notation to the effect that Claimant was fined on a fraud charge. The evidence in the record indicates that the fraud allegations were made in reference to events in 1973 and the indictment was in 1976. Claimant states there were important witnesses who were no longer available and they had not been informed exactly what the accusations were. Claimant alleges that Mr. Tzinberg was suffering from cancer and underwent surgery for the removal of the same, and that because of his ill health and in order to avoid further acceleration of his illness, they agree that the Court make a finding on the fraud charges. Claimant further alleges there was no element whatever of any admission of fraud in the disposition of the charges, and that fraud was specifically denied by Claimant.

Claimant cites as a defense of her position the case of *McCottrell v. Benson* (1961), 32 Ill. App. 2d 367, 178 N.E.2d 144. This case states that a plea of guilty in a criminal proceeding is admissible as an admission

against interest in civil proceedings arising from the same events; however, a record of a conviction is not admissible. Claimant also cites the case of *Cogdill v. Durham* (1976), 43 Ill. App. 3d 940, 358 N.E.2d 6, which states that even when a plea of guilty is admitted in a civil case, the affected party is entitled to offer an explanation of the plea of guilty, in diminution of the weight of the admission, which is to be considered along with all of the other evidence.

This Court is of the opinion that the fraud charge is not supported by the evidence submitted by Respondent.

One of the most important elements in this case, in the opinion of the Court, is that after the two notices to Claimant in July, business continued as before between Claimant and Respondent, and it was not until the letter of November 22, 1974, that the termination became effective. This seems to be a clear acknowledgment that Claimant did not consider the July letter and telegram to terminate the contract and the effective date was November 22, 1974. It is acknowledged that the items for which Claimant is attempting to collect were furnished at the request of Respondent and the orders were filled by Claimant as they had done in the past. This, in the opinion of the Court, is very clear evidence that Respondent did not believe that the letter and telegram sent to Claimant in July were effective in terminating the contract.

It is the opinion of the Court that Claimant is entitled to an award in the amount of $55,346.21, the total amount of payments due Claimant from January 1974 to November 1974, the actual termination date of the contract.